CITY OF CANTON *v.* IMPERIAL BOWLING LANES, INC.

(No. 2836—Decided February 10, 1966.)

Municipal Court of Canton.

*Mr. George H. Trifelos,* prosecuting attorney, for plaintiff.
*Mr. James V. Armogida,* for defendant.

HUNTER, J. The defendant is charged in an affidavit as follows:

"VIOLATION OF ORDINANCE OF THE CITY OF CANTON,
OHIO MUNICIPAL COURT

"The State of Ohio, Stark County, ss:

"Before me, Ruth Moffat, Deputy Clerk of said Municipal Court, personally came C. E. Jackson, Zone Inspector, who, being duly sworn according to law, deposes and says, that on or about the 14th day of December, 1965, at the County of Stark aforesaid, and in the City of Canton, one Imperial Bowling Lanes, Inc., an Ohio corporation unlawfully did, then and there, sell intoxicating liquor, to wit: malt liquor for consumption on its premises located at 26th Street and Roberts Avenue, N. W. in a district zoned as fifth area light industrial contrary to the Ordinance, Section 1427, in such case made and provided.

s/ C. E. Jackson, Zone Inspector

"Sworn to before me and signed in my presence this 15th day of December, 1965.

By s/ Ruth Moffat, Deputy Clerk."

To this affidavit the defendant demurs and said demurrer states:

"Now comes the defendant and demurs to the affidavit filed in the within cause for the following reasons:

"1. The facts stated therein do not constitute an offense punishable by the laws of this state.

"2. The offense charged therein is not within the jurisdiction of this court."

The charge is based on Canton City Ordinances No. 1427 and No. 231/64 which said ordinances are herein set forth in full.

It is the contention of the city that it has been granted authority to adopt such ordinances by virtue of Article 18, Section 3 of the Constitution of the state of Ohio. Said section provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

The following is a stipulation of facts by counsel for the respective parties:

Mr. Armogida: The defendant corporation, Imperial Bowl-

ing Lanes, Inc., is the owner and operator of a business establishment located at 26th and Roberts Streets, Northwest, in the city of Canton, which includes the operation of bowling lanes * * * I believe there are twenty-four bowling lanes * * * billiard tables, a restaurant, and the sale of beer and wine for consumption on the premises under a D-2 license issued by the state of Ohio.

In May of 1965 the defendant corporation applied for a building permit from the city of Canton, Ohio, at which time a set of plans was submitted to the City Building Inspector. Incorporated in the plans were the twenty-four bowling lanes, a billiard parlor, a restaurant, and bar. The plans were approved by the City Inspector, and a building permit was issued by the city.

The defendant corporation then proceeded to construct a building, install sewers, provide for proper drainage and roadways in the area.

On August 14, 1965, an application for transfer of a D-2 license was filed with the Liquor Department of the state of Ohio, requesting a transfer of the license from 609 Twelfth Street, Northeast, in the city of Canton, to its present location. Notice of the filing was sent in accordance to Section 4303.261, Revised Code, by either registered or certified mail to the Canton city council by the permit division on August 18, 1965.

On September 24, 1965, a transfer of the beer and wine permit to this location was approved. On December 23, 1965, this affidavit was filed, charging a violation of Section 1427 of the Canton City Ordinance which was adopted July 16, 1956. We have attached a copy of that ordinance to the brief of the defendant which we have identified as Exhibit "1," which I believe to be a true copy of the ordinance.

The area in which the defendant's business establishment is located was zoned as "light industrial 5th area" on July 22, 1964 by ordinance 231-64, amending ordinance number 7277. We have also attached a copy of that ordinance to the brief of the defendant to its demurrer, which we have identified thereon as exhibit "2," and I believe that it will be agreed that is a true copy of that particular ordinance.

I think that generally, as far as the defendant is concerned,

covers the facts in this particular case for the court to consider in its consideration of the demurrer.

The Court: May I ask one question, Mr. Armogida, the exhibit "2" that is attached here describes certain properties by metes and bounds. Is the court to * * * I know I can take judicial notice of our ordinance and what that covers * * * but, does that cover this property on which the lanes are located?

Mr. Armogida: Yes, Your Honor, I omitted from my statement of facts that statement, but the particular property involved here is the property which is described in this particular ordinance; the portion of the ordinance which is on the second page that is captioned, "Light industrial, Fifth Area"; there is a part of the ordinance on page 1 of exhibit "2" that says a resident of the second area, that is not the property described in this case; it is the second parcel.

Mr. Trifelos: In addition to the allegations made by the defendant, I believe that counsel for the defendant will agree and stipulate that on the 14th day of December, 1965, the defendant corporation, Imperial Bowling Lanes, Incorporated, did sell intoxocating liquor, to wit: malt liquor for consumption on its premises located at 26th and Roberts Avenue, Northwest, which is located in a district zoned, "Fifth Area, Light Industrial," and pursuant to the ordinance mentioned by counsel for the defendant. And I believe further that the defendant will stipulate that the defendant corporation has been duly served and is properly before the court.

Mr. Armogida: That is correct, we will agree to that stipulation.

Mr. Trifelos: The city, however, without disputing the truthfulness of the allegations made by the counsel for the defendant, does object to the relevancy of certain portions of the statements made, mainly: the city objects to the relevancy of the allegation relative to making an application for a building permit; secondly, making an application for a transfer of liquor license; thirdly, objects to the allegation based on the issue of materiality concerning notice of filing for this transfer application; and, also, objects to the allegation relative to the approval of the State Liquor Department of the application for transfer.

Mr. Armogida: I would like to ask, so that there isn't any

question as far as the record is concerned, whether the city of Canton does stipulate, without going into the relevancy angle, does stipulate the facts as I have outlined are true?

Mr. Trifelos: I think I stated I am not disputing the truthfulness, only objecting to the relevancy.

Mr. Armogida: I see. I just wanted that to be clear on the record.

Mr. Trifelos: In addition, I think counsel for the defendant would agree that the area we are discussing was originally part of Plain Township and that it had been zoned dry and, further that this particular area was annexed to the city of Canton on or about July 22, 1964. And, that the area in question had been zoned by city ordinance as a "Light Industrial Fifth Area" prior to the application made for a liquor license into this area.

Mr. Armogida: We take the same position as counsel for the city; that is, we will admit the truthfulness of that statement, except we don't believe that the statement "that it had been voted dry" has any particular merit or relevancy in this particular case.

Mr. Trifelos: For the purpose of establishing venue, it is agreed by both parties then that the location of 26th and Roberts Avenue, Northwest, on the 14th day of December, 1965 was in the city of Canton, Stark County, Ohio?

Mr. Armogida: That is correct.

The question before the court is whether or not Ordinance 1427 of the city of Canton is in conflict with the general laws of the state of Ohio and therefore unconstitutional.

There is no question that the state of Ohio, by general law, may pre-empt any field or subject, to the exclusion of any of its political subdivisions. However, there are a few fields where the state has made certain concessions to the political subdivisions by making specific grants to legislate on certain subjects. For example, the state has pre-empted the fields of taxation, licensing boats and automobiles, aviation, workmen's compensation, regulation of public utilities, the practice of law and medicine, and many other subjects.

The court has examined the law relative to other subjects than the one now to be decided in order to compare the decisions of our Supreme Court. A recent decision of the Supreme Court

of Ohio clearly indicates the thinking and reasoning of said court and the law to be followed in cases of this kind. I refer to the case of *Cleveland* v. *Betts,* 168 Ohio St. 386, the syllabus of this case provides:

"Section 3, Article XVIII of the Constitution of Ohio, authorizes municipalities to adopt and enforce within their limits only such local police regulations as are not in conflict with general laws, and a municipal ordinance which makes the carrying of concealed weapons a misdemeanor is in conflict with a general statutory enactment making the identical offense a felony and is invalid."

On page 389 of this opinion, Judge Zimmerman has this to say:

"We are aware that in the case of *Village of Struthers* v. *Sokol,* 108 Ohio St. 263, 140 N. E. 519, followed in other later cases decided by this court, it was declared that in determining whether a conflict exists between a statutory enactment and a municipal ordinance "the test is whether the ordinance permits or licenses that which the statute forbids and prohibits and vice versa." But surely this test is not exclusive. Although the ordinance in issue does not permit what the statute prohibits, and vice versa, it does contravene the expressed policy of the state with respect to crimes by deliberately changing an act which constitutes a felony under state law into a misdemeanor, and this creates the kind of conflict contemplated by the Constitution."

Another example of similar legislation is to be found in the case of *Yorkavitz* v. *Township Trustees,* 166 Ohio St. 349, the second paragraph of the syllabus provides:

"Where the General Assembly delegates to township trustees police power to adopt zoning regulations for the unincorporated territory in their respective townships, and where the General Assembly, by the enactment of general laws prior to such delegation, declares a policy of promoting aviation and the establishment of airpoirts, it is outside such police power delegated to the township trustees to enact zoning regulations prohibiting airports throughout the unincorporated territory of their respective townships by declaring that airports are nuisances per se, and such regulations are invalid."

The court has also examined authorities and cases dealing

with similar provisions and regulations of the Liquor Control Act for assistance in arriving at a solution to the question now to be decided. From Farrell-Ellis, Ohio Municipal Code, on page 40, we find this statement of the law:

"The purpose of the non-conflict provision, as disclosed by the debates of the constitutional convention, is not to empower the General Assembly to directly limit or restrict the power of municipalities to adopt police regulations, but, instead, is to secure uniform operation of state police regulations throughout all the political subdivisions of the state. If the General Assembly does not deem it necessary to enact a police regulation for the entire state governing a certain subject, then each municipality is free to adopt any proper regulation with respect to such matter. If the state enacts a police regulation on the subject, then a municipality cannot adopt any police regulation with respect to the same subject in conflict with the state regulation."

In 58 Ohio Jurisprudence 2d page 579, Section 111, we quote from the first and third paragraphs thereof:

"Conflict with General Law. The power of a political subdivision to adopt and enforce zoning regulations is limited not only by the specific grants and restrictions of the zoning enabling acts, but by the general law of the state. A political subdivision of the state cannot enact and enforce regulations which are in conflict with the general law of the state. This principle applies not only to townships and counties which derive zoning power from the enabling acts, but to municipal corporations which receive zoning power from the home-rule provision (Article XVIII) of the Ohio Constitution.

"While the courts have often avoided finding a conflict with state laws by applying a construction which rendered the local regulations consistent with the general law, this result cannot always be reached. Where a zoning regulation offends state policy, as in the case of an ordinance which excludes from the territory uses favored by the state, the regulation is invalid."

In 31 Ohio Jurisprudence 2d page 108, Section 21, the first paragraph provides:

"Power to Require and Issue. The power of the state to require a license or permit as a condition of engaging in the liquor business within its territorial limits is well established,

and the legislative power over this matter is a plenary one, except as far as it may be limited by the state constitution. In Ohio, the power to issue liquor permits has been vested in and imposed upon the Department of Liquor Control.''

In the case of *Cozart* v. *City Manager,* 133 Ohio St. page 50, the court held that a city, by ordinance, could not limit the number of liquor licenses per specified population number which was different from the number provided by Ohio statutes.

In the case of *Columbus* v. *Mark,* 1 Ohio App. 2d 38, the court held that an ordinance changing the hours of sale of liquor that were different from the hours specified in the Code was in conflict with the general laws of Ohio and was, therefore, unconstitutional. This case was decided in July of 1963.

The court, in this case, based its decision and relied on the case of *Neil House Hotel Company* v. *Columbus,* 144 Ohio St. 248. Judge Zimmerman well states the law in his opinion that we quote a portion thereof:

''Where the General Assembly has spoken through legislation, on a matter of state-wide concern, a municipal ordinance in conflict with such legislation must give way to the superior authority. *City of Cincinnati* v. *Gamble, et al., Board of Trustees,* 138 Ohio St. 220, 34 N. E. 2d 226; *State, ex rel. Arey,* v. *Sherill, City Manager,* 142 Ohio St. 572, 53 N. E. 2d 501, and cases cited therein.

''The theory of the cases is that due consideration is to be given to all parts of a constitutional provision. Therefore, since Section 3, Article XVIII of the Constitution grants municipalities authority to exercise local self-government, with power to adopt and to enforce within their limits such local police, sanitary and other similar regulations as are not in conflict with general laws, it follows that when such regulations do conflict with general laws relating to affairs of statewide interest, the general laws are paramount.

''It may not be gainsaid that the control and regulation of the liquor traffic is within the province of the state government in the exercise of its police power. *State, ex rel. Zugravu,* v. *O'Brien,* 130 Ohio St. 23, 196 N. E. 664; *Frankenstein* v. *Leonard, et al., Board of Liquor Control,* 134 Ohio St. 251, 16 N. E. 2d 424.

''The General Assembly of Ohio has undertaken to control

and regulate the production, sale and dispensing of beer, wine and spirituous liquors throughout the state and has created an agency called the Board of Liquor Control to execute and administer the laws and to regulate the conduct of those who engage in the manufacture and sale of alcoholic beverages.''

Of the same effect is the case of *Auster* v. *Toledo,* 173 Ohio St. 444. This case was decided in 1962. The second paragraph of the syllabus provides:

''A C-2 permit issued pursuant to the Ohio Liquor Control Act authorizes the person to whom it is issued to carry on at the place specified therein the business of selling beer and other intoxicating liquors as that business is described in Section 4303.12, Revised Code, and a municipal ordinance which prohibits the carrying on by such a person of such business at that place without a city license to do so, that is obtainable only upon paying a fee, would conflict with Sections 4303.12 and 4303.27, Revised Code.''

Judge Taft, in his opinion on page 447, has this to say:

''In the instant case, the ordinance forbids and prohibits what the statute permits and licenses. Even though plaintiff has a state license authorizing him to carry on the business of selling beer in Toledo, the ordinance prohibits him from doing so if he does not pay for and secure a municipal license to do so.''

The case most nearly in point, and of recent decision, 1960, is that of *Lyndhurst* v. *Campola,* 112 Ohio App. 483. This case involved a zoning ordinance and the sale of liquor in restaurants in zones which provided the sale of liquor therein. We quote the first paragraph of the syllabus:

''The regulation of the sale of liquor in Ohio has been completely pre-empted by the state, and local authorities are without power to deny the right to exercise the privileges granted a liquor permittee where, by state law, such privileges are provided for under state regulation.''

Having examined the decisions in other fields, let us now examine the laws relative to the transaction and sale of intoxicating liquor in the state of Ohio. The sale of intoxicating liquor in Ohio is controlled by the Department of Liquor Control, and by rules and regulations adopted by the Board of

Liquor Control, together with specific statutes designed to provide and set out how, when and by whom liquor may be sold. The power given the Board of Liquor Control is embodied in Sections 4301.03, 4301.04 and 4301.05, Revised Code, and we quote paragraphs A and G thereof:

"The liquor control commission may adopt and promulgate:

"(A) Rules and regulations with reference to applications for and the issuance of permits for the manufacture, distribution, transportation, and sale of beer and intoxicating liquor, and the sale of alcohol; and rules and regulations governing the procedure of the department of liquor control in the suspension, revocation, and cancellation of such permits;

"(G) Rules, regulations, and orders limiting the number of permits of any class within the state or within any political subdivision of the state; and for such purpose adopting reasonable classifications of persons or estabishments to which such authorized class of permits may be issued within any such political subdivision."

The issuing of permits is provided for in Section 4303.27, Revised Code:

"Each permit issued under Sections 4303.02 to 4303.23, inclusive, of the Revised Code, shall authorize the person named to carry on the business specified at the place for one year commencing on the date after the date of its issuance."

The issuing of D-2 permits is provided for by Section 4303.14, Revised Code.

Restrictions on the issuing of permits is controlled by Section 4303.29, Revised Code. This section of the Code provides certain restrictions on D-3, D-4, and D-5 permits, but we fail to find any restrictions on the issuance of D-2 permits.

Section 4303.29, Revised Code, specifies relative to whom these types of permits may be issued and the second paragraph provides that no permits of any kind may be issued to a person convicted of a felony. And paragraph three of this section provides for C and D permits, that is, as to the number of permits according to population of any given subdivision. And paragraph four discusses D-3 permits to clubs and defines what is a club and under what circumstances they may get a permit. And

paragraph five limits the number of D-3, D-4, and D-5 permits according to the population of any given subdivision. Now, the sixth paragraph is not applicable to this case. This provides:

"No D-3, D-4, or D-5 permit shall be issued in any municipal corporation, or in any township, exclusive of any municipal corporation or part thereof, in which at the November, 1933, election a majority of the electors voting thereon voted against the repeal of Section 9 of Article XV, Ohio Constitution, unless the sale of spirituous liquor by the glass is authorized by a majority vote of the electors voting on the question in such municipal corporation or township or part thereof, in this section designated as the liquor control district, at an election held pursuant to this section or by a majority vote of the electors of the liquor control district voting on question (D) at a special local option election held in such district pursuant to Section 4301.35 of the Revised Code."

The court calls special attention to this section because it refers to D-3, D-4, and D-5 permits. Only in the issuing of permits, the restriction of issuing of permits, is any mention made of D-2 permits, and a D-2 permit is what is before the court on this particular occasion.

The Code also provides for the manner in which objections may be made, and by whom, to the issuance or transfer of liquor permits. Section 4303.261, Revised Code, specifically provides in what manner local governments may object to permit applications and the transfer of same. Section 4301.58, Revised Code, provides for who may sell intoxicating liquor and specifically provides that no person may sell intoxicating liquor without being the holder of a permit issued by the Department of Liquor Control.

From a careful review and analysis of the statutes of Ohio and the rules and regulations promulgated by the Board of Liquor Control, it appears to the court that the state of Ohio has fully and completely covered the subject of the control and sale of all intoxicating beverages within the state. It has provided penalties for all violations of rules and regulations relative thereto. In other words, the court is of the opinion that the state of Ohio has pre-empted this field and that under the home rule provisions of the Constitution, no political subdivi-

sion may promulgate any law which is in conflict with said statutes.

Canton City Ordinance 1427 seemingly attempts to make a new and different law and to provide a separate and distinct penalty, both of which are different from the laws or penalties provided by state statute. This new violation or law which this ordinance provides for is found in the affidavit "selling intoxicating liquor, to wit, malt liquor, for consumption on premises— in a district zoned as a fifth area light industrial." The Board of Liquor Control, by its rules and regulations, together with the state statutes, nowhere have adopted or passed such a law or regulation. To permit a municipality to do this would be in direct conflict with state law and would encroach upon a subject which the state has pre-empted, and therefore would be unconstitutional.

Let's examine this ordinance further and more closely, together with the penalty provided for its violation. Said ordinance states: "In no residential district and in no heavy or light industrial district and in no district except the sixth area is beer, wines, and or intoxicating liquor to be sold for consumption on the premises of the seller." Also, an examination of the penalty, which must be construed along with the ordinance, makes us inquire if the requirements of strict construction of criminal statutes have been met. 15 Ohio Jurisprudence 2d, Sections 20 and 21 under criminal law recites as follows:

"Rule of Strict Construction. It is a well-established rule, recognized by statute, that penal laws must be strictly construed. More accurately, it may be said that such laws are to be interpreted strictly against the state and liberally in favor of the accused. The rule of strict construction applies to words defining an offense and prescribing punishment, whether found in a statute or in an ordinance."

From Section 21, we quote:

"A statute defining a crime or offense cannot be extended by construction to persons or things not within its descriptive terms although they appear to be within the reason and spirit of the statute or within the mischief intended to be avoided, and this is true even though the cases appear to be of equal atrocity. Only those transactions are included which are both within its

spirit and letter; and all doubts in the interpretation of a statute are to be resolved in favor of the accused. Where a statute defining an offense designates one class of persons as subject to its penalty, all other persons are deemed to be exempted therefrom.''

To the same effect is the case of *Columbus* v. *DeLong,* 173 Ohio St. 81.

The ordinance under consideration is a mixture of civil and criminal provisions. Under Chapter 29 of the Revised Code of Ohio, which said chapter defines crimes, we find that each crime is specifically defined and commences ''no person shall'' and then describes the prohibited act and the person or persons prohibited. The names, the persons by title or class, and those not included are not covered or prohibited. For example, if a treasurer is named in the embezzlement statute, a deputy treasurer is not included; if a clerk or sheriff are named, the deputy clerk or deputy sheriff are not included.

Let's now examine the penalties for violation of this ordinance. After providing for height of buildings, terraces, towers, and other kindred subjects, and through several sections of the zoning code, Section 1455, the penalty section of the ordinance, provides:

''Any person who violates the provisions of this chapter shall upon conviction be fined not more than five hundred dollars ($500.00.) Each day during which the violation shall continue shall constitute a separate offense.''

Most certainly there can be no continuing penalty for such a violation as charged in the affidavit against this defendant.

Let's apply the test as laid down by the Supreme Court in the *Sokol case* to which we have referred above, which was one of the early decisions on this question of conflict of state statute with an ordinance of the Village of Struthers. We quote:

''The test is whether the ordinance permits or licenses that which the statute forbids and prohibits.''

In this case before the court the statute permits and licenses that which the ordinance forbids and prohibits. There can be no question that this is a definite conflict. Counsel for the city argues that the ordinance was in effect prior to the time that the D-2 permit was issued to the defendant, which is a fact. One appellate court decision supports them in this view of the

law, deciding and reporting in 70 Ohio App., page 429. However, this court is not bound by that decision, and, furthermore, recent decisions by our Supreme Court convince this court that this is not now the law in Ohio.

In viewing this ordinance, together with the penalty, the court concludes that said ordinance is too vague and indefinite and does not comply with the requirements of criminal law and ordinances, and is therefore, unconstitutional.

The question then arises in the public's mind, "What then will prohibit the Board of Liquor Control from issuing permits in residential areas of our city?" This question was raised and answered in several of the decisions and the court recalls one case wherein one of the judges of the Supreme Court made the observation that the Board of Liquor Control could issue permits in areas prohibited by city ordinance, and, likewise, in another opinion one of the judges stated that a municipality, by ordinance, could prohibit the issuance of liquor permits in any parts of its city. The fact remains that over a period of years, during the existence of the Board of Liquor Control, there have been but very few cases, in fact only two which this court has been able to find, wherein there has been such a conflict. * * * This, no doubt, is the reason for Section 4303.261, Revised Code, which gives the authorities of a municipality, schools, churches, and even individuals the right to protest and object to the issuance and transfer of liquor permits in areas where same would be objectionable.

The defendant also raises as one of its defenses the doctrine of estoppel, claiming that when the city council was notified of the application of the defendant to transfer its D-2 permit to its present location, no action was taken and no protest was made by the city; that after the expiration of the thirty days provided in such notice, the transfer was authorized by the Department of Liquor Control.

On this doctrine of estoppel, we quote from 20 Ohio Jurisprudence 2d page 565, Section 80, which provides in part as follows:

"It is a well-settled general rule that the principles of equitable estoppel apply to municipal corporations as well as to individuals. It has even been said that the doctrine applies to municipal corporations the same as to individuals * * *. The

true rule seems to be that the application of the doctrine of estoppel in pais to municipal corporations is confined to cases in which they have the power to act or contract. In such cases they may estop themselves by conduct, silence, or acquiescence in the same way as natural persons."

This doctrine is fully discussed in the case of *Mastroianni* v. *Board of Liquor Control,* 69 Ohio Law Abs. 431.

There would be no question of the application of the law of estoppel as to an individual, under the same or similar facts and circumstances, had he conducted himself as did the city of Canton in this case. However, the court does not feel that it is necessary to rule on this point since we find other grounds and reasons on which to rest this decision. There does arise a question in the court's mind as to what would have been the action of the Board of Liquor Control had the city lodged a protest and objection to the transfer of this D-2 permit by the defendant, setting forth fully their reasons therefor, and especially the provisions of ordinance 1427.

The court finds and concludes that that portion of Ordinance 1427 which prohibits the sale of intoxicating liquor in this district zoned as "Fifth Area Light Industrial" is unconstitutional. The demurrer of the defendant is, therefore, sustained and the defendant is discharged.

*Demurrer sustained.*