RIDGLEY, INC., APPELLANT, *v.* BOARD OF ZONING APPEALS, CITY OF WADSWORTH, APPELLEE.

[Cite as Ridgley, Inc. *v.* Wadsworth Bd. of Zoning Appeals (1986), 28 Ohio St. 3d 357.]

(No. 86-260—Decided December 30, 1986.)

*Williams, Batchelder, Johnson & Bux* and *C. Nevada Johnson, Jr.,* for appellant.

*Norman E. Brague,* law director, for appellee.

DOUGLAS, J.  The issue presented in this case is whether a municipality is preempted by operation of state law from regulating, pursuant to the authority of local zoning ordinances, the retail sale of alcoholic beverages within that municipality. We answer in the negative.

Section 3, Article XVIII of the Ohio Constitution, known as the home rule provision, provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police,

sanitary and other similar regulations, as are not in conflict with general laws."

Thus, a municipal zoning ordinance is valid unless it conflicts with the dictates of a state statute. R.C. 4303.292 provides in part:

"(A) The department of liquor control may refuse to issue, transfer the ownership of, or renew, and shall refuse to transfer the location of any retail permit issued under this chapter if it finds:

"* * *

"(2) That the place for which the permit is sought:

"(a) Does not conform to the building, safety, or health requirements of the governing body of the county or municipality in which the place is located. This section shall not be construed to include local zoning ordinances, nor shall the validity of local zoning regulations be affected by this section."

Pursuant to R.C. 4303.292, the state is barred from issuing a liquor permit when the sale of alcoholic beverages from the place for which the permit is sought would violate a local zoning ordinance. Since a liquor permit cannot validly be issued, under state law, in contravention of local zoning ordinances, municipal zoning ordinances limiting the retail sales of alcoholic beverages within the municipal corporate boundaries are not in conflict with state liquor laws providing for the issuance of liquor permits. There being no conflict, a municipality is not preempted by operation of state law from promulgating and enforcing zoning ordinances limiting the retail sale of alcoholic beverages within the municipal corporate boundaries.

Accordingly, we affirm that portion of the court of appeals' decision which reversed the decision of the common pleas court. However, we conclude that the remand of this cause for consideration of estoppel, waiver, and constitutional issues, as ordered by the court of appeals, is inappropriate. A thorough review of the record reveals that the issues of estoppel and waiver were never argued by appellant in any proceeding below. The court of appeals *sua sponte* raised these issues. Since these questions were not presented by appellant in either the trial court or the court of appeals,[1] they were not before the court and a remand to the trial court by the court of appeals to consider these questions was improper.

The same is true of the constitutional issue. While appellant made a passing reference to the constitutionality of the zoning ordinance in its "*[p]ost*-trial brief" in the trial court, even accepting that this raised the constitutional issue, appellant did not present the issue to the court of appeals.[2] Since appellant chose not to expand the scope of review in either

---

[1] In the court of appeals Ridgley, Inc. did not file a cross-appeal or present assignments of error on its own behalf pursuant to R.C. 2505.22. Perhaps Ridgley, Inc. did not so act because it raised no issue other than the preemption question in the court of common pleas.

[2] See fn. 1.

the court of common pleas or the court of appeals, it is now too late to do so.

Accordingly, we affirm that part of the decision of the court of appeals that reverses the judgment of the trial court. We reverse that part of the court of appeals' decision which remands the cause to the trial court and we enter final judgment for appellee.

*Judgment affirmed in part*
*and reversed in part.*

LOCHER, HOLMES and WRIGHT, JJ., concur.

CELEBREZZE, C.J., SWEENEY and C. BROWN, JJ., dissent.

CELEBREZZE, C.J., dissenting. Appellant operates a retail convenience store/gasoline station in the city of Wadsworth. The station is located in a section locally zoned as "Highway Interchange Commercial District" which permits the operation of, *inter alia,* gasoline service stations, but which makes no specific reference to beer sales. The adjacent areas are comprised of businesses, restaurants, shopping stores, and the like.

After obtaining a "C-1" liquor permit (which is the appropriate permit for an "operator of a retail store to sell beer in containers and not for consumption on the premises" [R.C. 4303.11]) from the Ohio Department of Liquor Control, appellant began selling packaged beer as part of its carry-out wares (candy, soft drinks, cigarettes, etc.). Soon thereafter the city cited appellant for a local zoning violation, alleging that beer sales did not fall within the permissible uses of the property's zoning.

On appeal from the zoning board decision adverse to appellant, the common pleas court, finding that the state of Ohio had preempted the control and sale of liquor by vesting the licensing authority in the state liquor authority, ruled in appellant's favor. Since the local zoning ordinance prohibited an activity which was permitted by the state liquor license, the trial court found it in conflict and therefore invalid.

In a divided decision, the court of appeals reversed. The majority opinion states that state liquor laws do not preempt local zoning regulations and noted the possibility "that liquor permits would sometimes be subordinate to [local] zoning regulations." The court of appeals observed that a "city's power to enact valid zoning ordinances would be virtually emasculated" if such local ordinances were held invalid.

In his dissent, Judge Baird found the local law to be unconstitutional because it is in conflict with state law. He also opined that the municipality's zoning authority would not be destroyed because "to the extent that it can control through zoning the location of the underlying business, the municipality's zoning power is not emasculated."

Thus, the issue presented to this court is whether a local zoning ordinance may permit the operation of a retail store but prohibit the retailer from selling packaged beer notwithstanding the fact that the retailer has obtained the appropriate state liquor permit for the location from the Ohio Department of Liquor Control.

Zoning is undeniably an exercise of municipal police power subject to the no-conflict-with-state-law rule. See, generally, Vaubel, Municipal Home Rule In Ohio (1978), Section 97, at 821. Likewise, the better view is that the state has not strictly preempted the regulation of liquor but rather has chosen to share it with local governments. In fact, it was a local liquor regulation which led this court to so hold in the case of *Struthers* v. *Sokol* (1923), 108 Ohio St. 263. The *Struthers* court is also credited with first articulating the so-called head-on "collision" test.

More recently this court invalidated a city ordinance which restricted the hours of the sale of alcohol contrary to the state's general laws in *Neil House Hotel Co.* v. *Columbus* (1944), 144 Ohio St. 248 [29 O.O. 403]. Thereafter, we also struck a Toledo law which required state permit holders to also obtain a local license in order to sell intoxicants at the place specified in the state permit. *Auxter* v. *Toledo* (1962), 173 Ohio St. 444 [20 O.O.2d 71].

With regard to a community's attempt to utilize its zoning power as a guise to prohibit or regulate the selling of liquor, Ohio's courts have traditionally thwarted local attempts to do covertly what they could not constitutionally achieve overtly. By way of illustration, in the case of *Canton* v. *Imperial Bowling Lanes* (M.C. 1966), 7 Ohio Misc. 292 [36 O.O.2d 380], a state liquor permit holder's location was zoned "light industrial" which, under the terms of the ordinance, barred the sale of liquor. The zoning ordinance was held invalid as being in conflict with state law. Similarly, a local zoning scheme which allowed liquor sales in some restaurants but not others which were located in a "local retail district" was found invalid in *Lyndhurst* v. *Compola* (1960), 112 Ohio App. 483 [16 O.O.2d 357]. See, also, *Square Deal Coal Haulers & Yardsmen's Club* v. *Cleveland* (C.P. 1961), 86 Ohio Law Abs. 83 [19 O.O.2d 71]; *Gozion* v. *Lakewood* (1959), Cuyahoga App. No. 24885, unreported, discussed in Vaubel, Municipal Home Rule in Ohio, *supra*, at 829, fn. 64.

It is true that R.C. 4303.292 does read in part that "[t]his section shall not be construed to include local zoning ordinances, nor shall the validity of local zoning regulations be affected by this section." However, in view of established precedent, the more persuasive position is that the state may not authorize a business to sell liquor in an area not properly zoned for that kind of underlying business.

For example, a beer brewing plant could not be licensed for an area zoned for hotels nor could a restaurant be permitted to sell liquor in a residential area. In such cases, the municipality would certainly be acting within its right to enforce the pertinent zoning ordinance under the home

rule amendments to the Ohio Constitution. In contrast, the instant zoning ordinance oversteps the municipality's legitimate authority by allowing a retail business to locate at the site while prohibiting it from selling packaged beer, notwithstanding the fact that the business has lawfully obtained the proper state license. As such, the zoning law enacted by the municipality conflicts with the General Assembly's statutory scheme and should therefore be held invalid. Instead of seeking to zone the underlying land use — which it can do — this municipality has effectively forbidden that which the state has permitted. As in *Square Deal, supra,* the city of Wadsworth actually "seeks to control the sale of beer and liquor by regulating the use of buildings under its broad zoning powers. In effect, the local authorities seek to do by indirection that which they concede they are prevented from doing directly. The ordinance embodying practically the same language used in the statute arbitrarily prohibits that which the State permits. If such legislation is permitted to stand, every municipal governing body throughout the State through the use of local zoning laws conceivably could abrogate the powers which the General Assembly specifically delegated to the Department of Liquor Control for state-wide enforcement and to the people directly through the privilege of local option." *Id.* at 89.

Furthermore, the legislature has included a number of safeguards in the liquor control laws to protect localities from unwanted liquor operations. Cf. local option laws, R.C. 4301.32 *et seq.*; permit criteria, R.C. 4303.26; sustainable zoning ordinances, R.C. 4303.292; etc.

Initially, the ordinance at bar appears on its face to be a reasonable effort to regulate the local sale of beer. But, if the principle of allowing municipalities to usurp the state's regulatory authority through the use of zoning is upheld, localities could soon emasculate the state's power by zoning out otherwise legal activity with narrow zoning definitions. In fact, neighboring towns may find themselves forced into the adoption of comparable legislation to defend against the effects of overzealous enactment of such zoning measures. This would, of course, trample the laudable purposes sought to be achieved by uniform statewide liquor control.

In this case, appellant lawfully operates a retail store in a commercial district. The state issued the appropriate "retail store" permit to allow the sale of packaged beer. There is an obvious conflict, and the ordinance under which the municipality purports to enjoin appellant's activities is therefore ineffective as a police measure by authority of Section 3, Article XVIII, Ohio Constitution.

SWEENEY, J., concurs in the foregoing dissenting opinion.

SWEENEY, J., dissenting. The decision of the majority today misinterprets the thrust of R.C. 4303.292 in particular and the liquor control law in general, ignores a wealth of decisional law compelling an opposite result

and, in so doing, undermines a comprehensive statewide program for the regulation of the sale and consumption of alcoholic beverages.

The majority opinion has engaged in a selective reading of R.C. 4303.292 which results in a tortured construction of its provisions. R.C. 4303.292 provides in part:

"(A)  The department of liquor control may refuse to issue, transfer the ownership of, or renew, and shall refuse to transfer the location of any retail permit issued under this chapter if it finds:

"* * *

"(2)  That the place for which the permit is sought:

"(a)  Does not conform to the building, safety, or health requirements of the governing body of the county or municipality in which the place is located. *This section shall not be construed to include local zoning ordinances,* nor shall the validity of local zoning regulations be affected by this section." (Emphasis added.)

The most cursory review of R.C. 4303.292 evidences a legislative intent that a liquor permit is not to be issued where the permit premises do not conform to municipal or county building, safety or health codes. Specifically exempted from the operation of this section, however, are "local zoning ordinances." Consequently, local zoning ordinances can not become the basis for the denial of a permit under the liquor control law.

Notwithstanding that this aspect of R.C. 4303.292 was left unaddressed by the majority opinion, it is contended that the succeeding phrase authorizes local governmental entities to prohibit what the state, through its licensing process, permits. Such an interpretation renders R.C. 4303.292 internally inconsistent since the construction ascribed to the latter phrase renders meaningless the former provision. Essentially, the majority is stating that, irrespective of the unambiguous language of the statute that zoning ordinances are not to be considered in the issuance of a permit, the local governmental authorities are free to engage in a subterfuge that destroys the rights and privileges that a liquor permit is supposed to confer. The effect of the majority opinion is to reduce a liquor permit to a worthless document entitling the holder to nothing of value.

A more plausible interpretation of R.C. 4303.292 would recognize that the legislature was both cognizant of the need for a uniform permit system and sensitive to the legitimate concerns of local authorities. The clear import of R.C. 4303.292 is that the rights and privileges accorded by a liquor permit can not be undermined by the enactment of a zoning ordinance that presumes to deny to the permit holder the opportunity to exercise these rights. Conversely, the legislature, by the inclusion of the latter provision, has acknowledged that the issuance of a permit to sell alcoholic beverages does not confer upon the permittee the right to conduct his business in violation of zoning ordinances reflecting valid local concerns. Thus, a liquor permit would not authorize the sale of alcoholic beverages in a residential district in violation of a zoning ordinance restricting such

establishments to commercial areas. See *Carnabuci* v. *Norwalk* (1942), 70 Ohio App. 429 [25 O.O. 176].

However, the ordinance presently before this court does not attempt to merely limit the sale of alcoholic beverages to commercial districts. Rather, it attempts to prevent the sale of alcoholic beverages while permitting other commercial activities. In so doing, it attempts to undertake a regulatory function reserved for the state under R.C. Title 43.

The determination that the ordinance enacted by the city of Wadsworth is preempted by state law is not only supported by a plain reading of R.C. 4303.292 but is mandated by Section 3, Article XVIII of the Ohio Constitution. Section 3 provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

It is beyond question that a conflict exists between state law and the city of Wadsworth Planning and Zoning Code. The zoning ordinance attempts to prohibit what the state has allowed. Where such a conflict exists, local municipal ordinances must yield to state law. Thus, in *Lorain* v. *Tomasic* (1979), 59 Ohio St. 2d 1, 4 [13 O.O.3d 1], it was stated: "* * * a city ordinance cannot forbid and prohibit what the statute permits and licenses." (Emphasis deleted.) In *Anderson* v. *Brown* (1968), 13 Ohio St. 2d 53, 59 [42 O.O.2d 100], this court concluded that, under such circumstances, the ordinance would be in conflict with the general laws of the state within the meaning of Section 3, Article XVIII and, hence, invalid.

Nowhere is the primacy of a state regulatory authority more pronounced than in the area of liquor control. This is due, in large part, to the plenary power to regulate the manufacture, sale and consumption of intoxicating beverages granted the states by operation of the Twenty-First Amendment to the United States Constitution. The repository of this authority in any particular state is the agency responsible for the regulation of alcoholic beverages. *California* v. *LaRue* (1972), 409 U.S. 109, 116. In this state, such authority is exercised by the Department of Liquor Control. In the proper exercise of this authority, the department issued a C-1 permit to appellant allowing it to sell beer for consumption off the premises where sold. (R.C. 4303.11.) Delegation of this function to municipal bodies should not be presumed in the absence of a clear legislative intent to do so.

The recognition of state primacy in the regulation of alcoholic beverages pursuant to the Twenty-First Amendment to the United States Constitution coupled with the clear imperatives of Section 3, Article XVIII of the Ohio Constitution lead inevitably to the conclusion that municipal ordinances in conflict with state liquor laws are constitutionally invalid. Such was the determination of this court in *Neil House Hotel Co.* v. *Columbus* (1944), 144 Ohio St. 248 [29 O.O. 403]. The court stated at 251:

"Where the General Assembly has spoken through legislation, on a matter of state-wide concern, a municipal ordinance in conflict with such legislation must give way to the superior authority."

Applying this principle to the Liquor Control Act, the court concluded at 253:

"Where the statutes and a valid regulation of the Board of Liquor Control say that the sale of intoxicants may not be made after a designated hour, it is equivalent to saying that sales up to that time are lawful, and an ordinance which attempts to restrict sales beyond an earlier hour is in conflict therewith and must yield."

A similar result was reached in *Auxter* v. *Toledo* (1962), 173 Ohio St. 444 [20 O.O.2d 71]. In *Auxter,* the court held that a municipal ordinance attempting to require a city license to sell beer was invalid. Significantly, the court dismissed the contention of the municipality that the licensing scheme was not an attempt to undertake liquor regulation but was merely "a device for regulation." In rejecting this argument the court explained that the requirement for a municipal license was, in essence, an attempt by the city to regulate the sale of beer. Such authority, the court determined, was preempted by state law.

Despite the unmistakable authority of *Neil House* and *Auxter,* the majority approaches the instant controversy as if it were a case of first impression. It clearly is not. Nevertheless, the majority fails to acknowledge the existence of *Neil House* and *Auxter,* much less distinguish them.

A decision to invalidate the Wadsworth city ordinance will not render localities powerless to address issues involving the sale and consumption of alcoholic beverages. The liquor control law contains numerous provisions affording citizens and local authorities the opportunity to participate in the licensing of liquor establishments. Chief among these provisions is the local option mechanism granting to the electorate of two adjacent precincts the authority to determine whether beer (R.C. 4305.14 *et seq.*) or intoxicating liquor (R.C. 4301.32 *et seq.*) is to be sold. Moreover, the legislative authority of a municipal corporation, the board of township trustees or the board of county commissioners is entitled to receive notice of hearings held by the Department of Liquor Control to consider the renewal, transfer of location or transfer of ownership of a liquor permit. (R.C. 4303.26.) These entities may also participate in such departmental hearings and are entitled to object to the renewal or transfer of the license. (R.C. 4303.271.) Finally, these legislative bodies are empowered to appeal the decision to renew or transfer the license to the Liquor Control Commission and to appeal any subsequent affirmance of the departmental decision to the court of common pleas pursuant to R.C. 119.12 (R.C. 4301.28.)

Notwithstanding the availability of these statutorily prescribed mechanisms, appellee has declined to utilize them. Instead, it has sought to adopt its own methods for challenging the issuance of a liquor permit and, in so doing, has undermined the comprehensive system for the regulation

of alcoholic beverages prescribed by the liquor control law. As a consequence, the delicate legislative balance struck between a legitimate concern for local control and the equal treatment of all permit holders has been upset. The effect of the majority opinion allowing the usurpation of state authority over the licensing of beer and liquor establishments is frightening to contemplate. Permit holders statewide will face great uncertainty as to whether the permit that they have acquired confers the rights and privileges associated with its possession. Consideration of the facts before this court is particularly instructive. Appellant has been issued a valid C-1 liquor permit. It has complied with the local zoning requirement confining businesses of its type to C-4 commercial districts. The sale of beer has been authorized pursuant to a local option election. Nevertheless, appellant is deemed precluded from exercising the rights conferred upon it according to state law because of the operation of a city ordinance that fails to specifically address the sale of alcoholic beverages within its provisions. See Wadsworth Codified Ordinances, Sections 1303.19, 1341.01 and 1341.02(a).

The majority opinion will ultimately result in the dispossession of liquor privileges by permit holders statewide despite the fact that they hold validly issued liquor licenses, despite the fact that local option elections have permitted them to conduct a lawful business and despite the fact that their permit premises are properly located in commercial districts. Future and current permittees will be left to ponder whether the investments they have made in their businesses[3] will evaporate without ever having their right to sell alcoholic beverages considered by the electorate in a local option election.

The reasoning employed by the majority will lead inevitably to the Balkanization of governmental authority as it relates to the regulation of the liquor industry. Permit holders will face a legal minefield of duplicative and often conflicting regulations. Most disturbing, however, is the majority's implicit approval of any effort by local authorities to substitute their judgment for that of the legislature. Will municipal officials be permitted to establish separate licensing mechanisms for liquor premises? Will cities be permitted to establish a drinking age within their territorial limits which is at variance with state law? Will the legislative bodies of municipalities be permitted to establish a separate system for adjudicating liquor violations?

These issues have been ignored by the majority. The result is an emasculation of R.C. Title 43 and Section 3, Article XVIII of the Ohio Constitution.

I, therefore, respectfully dissent from the decision of the majority.

---

[3] The acquisition of a liquor permit through transfer of ownership from an existing business can involve the expenditure by the transferee of amounts thousands of dollars in excess of the statutory fee.

CELEBREZZE, C.J., and C. BROWN, J., concur in the foregoing dissenting opinion.

CLIFFORD F. BROWN, J., dissenting. I dissent from today's decision for the simple reason that I believe the result is unjust.

The zoning district where appellant's business is located is a highway interchange commercial district. Local zoning laws authorize the operation of restaurants and hotels in that district. See Wadsworth Codified Ordinance Section 1341.02. One assumes that beer may be sold at these locations, as is the usual practice. Today's decision denies appellant that same privilege. Located immediately to the north of appellant's gas station is the Great Oaks Shopping Plaza, containing at least two facilities which have licenses allowing them to sell beer on a carry-out basis. Appellant may not.

No provision of the zoning code prohibits the sale of beer at appellant's place of business. Appellant was cited by the zoning inspector apparently on the basis that the sale of beer for consumption off the premises is inconsistent with the zoning code definition of a gasoline service station. This is a perfect example of the often arbitrary and needlessly harsh enforcement of local zoning laws. Whether the sale of beer does or does not fit the definition of a gasoline service station is a consideration so hypertechnical, irrelevant and trifling that it boggles the imagination. As long as a proposed activity is otherwise legal, I do not usually consider zoning an appropriate means for banning it. In my view, the proper purpose of zoning is to ensure that growth proceeds in an orderly and harmonious manner. In fulfilling this purpose, zoning should intrude on private uses of property as little as possible. It should not be utilized, as it too often is, as a method for foreclosing uses which local authorities deem undesirable for their own private reasons, or for reasons which are basically meaningless.

Accordingly, I would reverse the judgment of the court of appeals.

CELEBREZZE, C.J., and SWEENEY, J., concur in the foregoing dissenting opinion.