## Westlake v. Mascot Petroleum
### *[Cite as 2 AOA 441]*

*Case No. 57508*
*Cuyahoga County, (8th)*
*Decided April 19, 1990*

R.C. 2721.12
R.C. 4303.26
R.C. 4303.29.2
Civ. R. 65(B)

*Mark B. Cohn, Esq., Richard A. Wise, Esq., McCarthy, Lebit, Crystal & Haiman Co., L.P.A., 55 Public Square, Suite 900 Cleveland, Ohio 44113, For Plaintiff-Appellant.*

*Robert E. Cadigan, Esq., Raymond G. Mullady, Jr., Smith, Somerville & Case, 100 Light Street, Baltimore, Maryland 21202, William P. Farrall, Esq., David A. Fifner, Esq., Reminger & Reminger Co., L.P.A., The 113 St. Clair Building, Cleveland, Ohio 44114-1273, For Defendant-Appellees.*

PATTON, C.J.

Appellant Mascot Petroleum, d.b.a. Sunoco Minimart ("Sunoco"), appeals from the issuance of a permanent injunction in which its retail minimart was permanently enjoined from selling beer and wine under the zoning ordinances of appellee City of Westlake ("City"). Sunoco raises nine assigned errors that collectively challenge (a) alleged procedural irregularities, (b) construction of applicable

statutory provisions, and (c) the constitutionality of the City's zoning laws.

Prior to the hearings for injunctive relief, the parties entered into joint stipulations of fact. Under Ordinance 1216.03(d) (1), the City allowed the retail sale of alcoholic beverages in all enclosed buildings within a business district. On May 28, 1987, the City amended Ordinance 1216.03(d)(1) by adding fn. (g). That footnote specified that "the sale of alcoholic beverages at service stations is prohibited." A "service station" is defined in Section 1203.05(f) of the zoning ordinances as follows:

"'Automotive service station' means a building and land, including pumps, tanks and equipment, for retail sale of gasoline, lubricants, batteries, tires and other automobile accessories, and which is limited to performing minor services, installations and repairs."

The stipulations agree that no data, studies or reports were considered at the time of amendment. Rather, the mayor and city council believed the amendment would address safety concerns and apprehension concerning the sale of alcoholic beverages to minors.

On October 7, 1987, Sunoco submitted its plans for the minimart on the corner of Detroit Road and Dover Center Road to the City planning commission. Those plans were approved, although it is unclear whether the planning commission was aware that Sunoco intended to pursue the sale of alcoholic beverages.

Sunoco then applied to the department of liquor control for a C-2 liquor permit which would authorize the sale of beer and wine at the minimart. The City attended the hearing and voiced opposition to Sunoco's application. Despite that opposition, a C-2 license was issued. The City thereafter issued a permit of occupancy for the minimart.

On December 8, 1988, the City filed a complaint for preliminary and injunctive relief against the sale of alcoholic beverages in the minimart. The substance of the City's claims was that the utilization of the C-2 license would violate the amendment to Ordinance 1216.03(d)(1) fn (g) that prohibited the sale of alcoholic beverages at service stations.

Sunoco counterclaimed for declaratory relief. It cited to the state's liquor licensing authority set forth in R.C. 4303.292 as proof that the state had preempted legislation in the field. Sunoco therefore sought a declaration that the ordinance impermissibly conflicted with R.C. 4303.292. In addition, Sunoco sought a declaration of the constitutionality of the zoning amendment. Finally, Sunoco asked the court to determine whether the minimart was a "service station" as that word was defined in the zoning ordinance.

The court held an oral hearing and granted a preliminary injunction. A hearing for the permanent injunction was scheduled, but not held. Instead, the court issued a judgment entry in which it found that the ordinance is valid and "does not conflict with R.C. 4303.292 which bars the state from issuing a liquor permit when the sale of alcoholic beverages from the place for which the permit is sought would violate a local zoning ordinance." Sunoco appeals from that ruling.

I.

The eighth and ninth assigned errors address alleged procedural irregularities.[1]

A.

The eighth assigned error is that the trial court erred when it failed to declare Sunoco's rights as demanded in its counterclaim for declaratory relief. The City maintains that no such declaration was required since Sunoco failed to serve the attorney general pursuant to R.C. 2721.12.

Under R.C. 2721.12, the failure to serve the attorney general with a copy of the proceedings in a declaratory judgment action which challenges the constitutionality of an ordinance precludes a court of common pleas from rendering declaratory relief in that action. *Malloy* v. *Westlake* (1977), 52 Ohio St. 2d 103, syllabus; *Passauer* v. *Brook Park* (Nov. 19, 1987), Cuyahoga app. No. 53062 unreported. The failure is jurisdictional. *Malloy, supra,* at 105.

In some circumstances, the service to the attorney general may be dispensed with. For example, in *FRC of Kamms Corner* v. *Cleveland Bd. of Zoning Appeals* (1984), 14 Ohio App. 3d 372, this court held that R.C. 2721.12, as it relates to the jurisdiction of trial courts to rule on constitutional challenges to municipal ordinances, applies to actions *initiated* as declaratory judgment actions, not to appeals from the ruling of administrative agencies. *Id.,* at 374 (emphasis added); see, also, *State, ex rel. Madison,* v. *Cotner* (1981), 66 Ohio St. 2d 448 (service requirement of R.C. 2721.12 inapplicable to original action in mandamus).

Sunoco concedes that it did not serve a copy of its complaint to the attorney general, but maintains such service was unnecessary. It maintains that like *FRC, supra,* this action was not initiated as a declaratory judgment action,

but as a complaint for injunctive relief. This argument lacks merit. The complaint for declaratory relief was filed as a *counterclaim*. A counterclaim initiates a cause of action for a defendant. In *FRC*, the action was brought as an *appeal* from the ruling of an administrative agency, not as a declaratory judgment action. In this case, Sunoco's claim was only for declaratory relief. It was the start of the action as it related to Sunoco's claims concerning the constitutionality of the ordinance. Absent service on the attorney general, the trial court had no obligation to rule on the declaratory judgment.

However, not all of Sunoco's counterclaim pertained solely to constitutional questions. Part of the counterclaim sought a declaration that the minimart was not a service station under the definition set forth in the ordinance. This claim was unrelated to the constitutionality of the ordinance, so service upon the attorney general was not required. Another part of the complaint for declaratory relief asked the court to determine whether the ordinance was preempted by the state liquor licensing scheme set forth in R.C. 4303.292. Both of these questions remained for resolution despite the waiver of the constitutional questions.

### B.

The ninth assigned error is that the trial court erred by proceeding to render the permanent injunction without notice and a hearing.

It appears that all parties contemplated that a hearing on the permanent injunction would be held. Sunoco specifically reserved the right to submit additional evidence from that presented at the hearing for the preliminary injunction. Moreover, the trial court's journal entry of February 28, 1987 gave notice that a hearing on the motion for a permanent injunction would be held on March 1, 1989. However, the parties filed a joint stipulation granting the City leave to respond to Sunoco's counterclaim until March 10, 1989. Thereafter, the court rendered judgment on March 20, 1989.

Pursuant to Civ. R. 65(B)(2), a court may consolidate the merits of a complaint with a motion for a preliminary injunction. See *Turoff v. Stefanac* (1984), 16 Ohio App. 3d 227, 229; *Ohio Assoc. Public School Employees* v. *Mayfield Bd. of Education* (June 23, 1983), Cuyahoga App. No. 44932, unreported, at 5. It is error for the court to consider permanent injunctive relief absent notice to the parties, *Public School Employees, supra*, the reason being that permanent relief often requires different proof than that necessary to obtain temporary or preliminary relief. *Id.* In some circumstances, a court may proceed to render permanent injunctive relief if the evidence presented at a hearing "does not reveal any conflict of material fact that justifies a full trial on the merits." *George P. Ballas Buick-GMC, Inc.* v. *Taylor Buick, Inc.* (1982), 5 Ohio App. 3d 71, 74.

In this case, Sunoco specifically reserved the right to present evidence at a full trial on the motion for a permanent injunction. The court not only acknowledged that right, but stated on the record and in a journal entry that a hearing would be held. The fact that the parties requested leave to allow the City time to respond to Sunoco's counterclaim is of no significance. Nothing in the City's answer allows the inference that no material facts existed for trial. To the contrary, the counterclaim raised new issues for resolution. The error in failing to hold a trial was further compounded by the court's summary grant of permanent injunctive relief. The trial court abused its discretion in proceeding to render the permanent injunction absent notice to the parties and then not completely ruling on all the claims. The ninth assigned error is sustained, and the cause is remanded for a trial on the merits.

### II.

The second, third, fourth and fifth assigned errors relate to questions concerning the applicability of the City ordinance and its validity under state liquor licensing authority. Although our disposition of the ninth assigned error essentially moots our consideration of the remaining assigned errors, we proceed to address them pursuant to our obligation under App. R. 12(A).

### A.

The second assigned error is that the trial court erred by enforcing the ordinance against Sunoco when there was no showing that it was a "service station." Despite the trial court's failure to rule on this claim (see Part I.A.), it will be assumed that the court found the minimart to be a service station under the ordinance. Such a conclusion was error.

Section 1205.05(f) of the city zoning ordinance defines an "automotive service station" as follows:

"'Automotive service station' means a building and land, including pumps, tanks and equipment, for retail sale of gasoline, lubricants, batteries, tires and other automobile accessories,

and which is limited to performing minor services, installations and repairs."

Ordinarily, a finding by the court that the minimart was a service station would be a question of fact accorded wide deference by a reviewing court. See *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77. However, statutes imposing restrictions on land use are to be strictly construed and any doubts as to the applicability of the law are to be resolved in favor of the free use of the property. *Saunders* v. *Zoning Dept.* (1981), 66 Ohio St. 2d 259, 261.

Section 1203.05(f) lists several conditions joined by the conjunctive phrase "*** *and* which is limited to performing minor service, installations and repairs." Principles of statutory construction applicable to the contested definition require reading the word "and" in its ordinary sense. When read that way, "and" means "in addition to," and when two conditions are joined by the conjunctive "and" both conditions must be met. See *Colonial Mortgage Service Co.* v. *Southlard* (1978), 56 Ohio St. 2d 347, 349. A court may treat the word "and" as "or" where a use of its literal meaning would do violence to the evident intent of the lawmakers. *Id.*; *In re Estate of Marrs* (1952), 158 Ohio St. 95, 99.

It cannot be said that the last clause of Section 1203.05(f), "*** *and* which is limited to performing minor services, installation and repairs," was meant to be disjunctive; therefore, justifying the use of "or." That section clearly defines service station in the sense of a garage where automotive work is performed. Viewed in that sense, the ordinance would not encompass the minimart since the parties have stipulated that no minor repair work or services are involved. See Stipulation B(5). The interpretation that only service garages are included is supported by the purely automotive services required to be performed. Thus, the ordinance recognizes that certain automotive supplies like oil and wiper fluid do not constitute a "service station." It follows that any characterization of the minimart as a service station was erroneous. The second assigned error is sustained.

## B.

The third, fourth and fifth assigned errors relate to the trial court's finding that the City ordinance does not conflict with R.C. 4303.26 and .292. Sunoco argues that subsequent amendment of the statutes evidenced the General Assembly's intent to preempt local authority to regulate the sale of alcoholic beverages within their confines.

Crucial to the analysis of the issues raised by these assigned errors is consideration of *Ridgley* v. *Wadsworth Bd. of Zoning Appeals* (1986), 28 Ohio St. 3d 357. The syllabus of *Ridgley* states:

"A municipality is not preempted by operation of state law from promulgating and enforcing zoning ordinances limiting the retail sale of alcoholic beverages within the municipal corporate boundaries."

The facts of *Ridgley* were indentical to those of this case. Ridgley had obtained a C-1 liquor permit to sell beer from a gas station. A zoning inspector stopped the use, and Ridgley appealed. The supreme court was asked to construe R. C. 4303.292, which then read:

"(A) The department of liquor control may refuse to issue, transfer the ownership of, or renew, and shall refuse to transfer the location of any retail permit issued under this chapter if it finds:

"* * *

"(2) That the place for which the permit is sought:

"(a) Does not conform to the building, safety, or health requirements of the governing body of the county or municipality in which the place is located. This section shall not be construed to include local zoning ordinances, nor shall the validity of local zoning regulations be affected by this section."

The court upheld the local zoning ordinance. It reasoned that R.C. 4303.292 barred the state from issuing a liquor permit when the sale of alcoholic beverages from a place for which the permit is sought would violate local ordinances. Since a permit could not be issued under the statute, the court held that the zoning ordinance did not conflict with state authority to issue a permit. *Id.*, at 359.

Three members of the court issued separate dissents. In essence, the dissenters argued that R.C. 4303.292 simply prohibited the state from authorizing a business to sell liquor in an area not properly zoned for that kind of business. *Id.*, at 361 and 363.

Following the *Ridgley* decision, the General Assembly amended R.C. 4303.292 to read:

"(A) The department of liquor control may refuse to issue, transfer the ownership of, or renew, and shall refuse to transfer the location of any retail permit issued under this chapter if it finds:

"* * *

"(2) That the place for which the permit is sought:

"a) Does not conform to the building, safety or health requirements of the governing body of the county or municipality in which the place is located. As used in division (A)(2)(a) of this section, "building, safety, or health requirements" does not include local zoning ordinances, The validity of local zoning regulations shall not be affected by this section."

When enacting the amendment, the General Assembly set forth its reasons with the following statement of legislative intent:

"1987 H 419, [Section] 3, eff. 7-1-87, reads: The legislative intent of this act is to specify that only the residents of a community have the right to approve or disapprove the sale of alcoholic beverages through the statutory provisions authorizing a local option election, that if sales of such beverages are approved, *the primary authority to regulate the sale of alcoholic beverages is delegated to the Department of Liquor Control, and that the legislative or executive authority of a political subdivision has only such rights or powers with regard to these sales as are expressly granted under Chapter 4303, of the Revised Code."* (Emphasis added.)

The clear import of the amendment is that a community may only regulate whether alcoholic beverages may or may not be sold within the community. If such sales are allowed by local option election, a community may not further legislate the manner of sale by zoning ordinance. This reading seems especially applicable in view of the fact that the amendment came just six months after the *Ridgley* decision.

The issue, then, is whether the city zoning ordinance prohibiting the sale of alcoholic beverages from service stations conflicts with state authority to license such sales. When resolving such a question, the courts look to determine whether an ordinance is in "conflict" with general law by deciding whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa. *Struthers* v. *Sokol* (1923), 108 Ohio St. 263, paragraph two of the syllabus; *Auxter* v. *Toledo* (1962), 173 Ohio St. 444, 447.

The City argues that the amendments to R.C. 4303.292 did not affect its authority to regulate the sale of alcoholic beverages within its confines. To a certain extent, this argument is correct. As noted by Justice Celebrezze in his dissent in *Ridgley*, " ... the state may not authorize a business to sell liquor in an area not properly zoned for that kind of underlying business." *Id.*, at 361. By way of example, Justice Celebrezze pointed out that the state could not license a brewery for manufacturing in a residential area. *Id.*, 361-362. Under his analysis, the state's comity to local zoning laws would require it to deny a permit for a nonconforming use.

The City's argument fall short of reconciling the statutory amendment. Particularly important is the fact that the *Ridgley* majority held that the state could not issue a liquor permit for a nonconforming use under the zoning ordinance. *Id.*, at 359. The amendments to R.C. 4303.292(A)(2)(a), however, reject nonconformity as a ground for denying the permit: " ... 'Building, safety, or health requirements' does not include local zoning ordinances." The effect of this statutory language is to nullify the *Ridgley* holding.

It is true that R.C. 4303.292(A)(2)(a) states that "the validity of local zoning regulations shall not be affected by this section." The real meaning of that statement is best seen in Justice Celebrezze's dissenting opinion where he argues that the state may not permit a previously prohibited use. While the City may opt to ban liquor sales entirely from selected area (*e.g.*, residential), it may not selectively prohibit sales of alcoholic beverages within previously permitted zones. Such zoning clearly preempts state licensing. This view is clearly set forth in the General Assembly's statement of legislative intent that accompanied the amendment to R.C. 4303.292(A)(2)(a). This view is also in accord with R.C. 4303.26. That section, pertaining to hearings concerning the application for liquor permits, states in relevant part:

"*** In this hearing, no objection to the issuance, transfer of ownership, or transfer of location of the permit shall be based upon the noncompliance of the proposed permit premises with local zoning regulations which prohibit the sale of beer or intoxicating liquor, in an area zoned for commercial or industrial uses, for a permit premises that would otherwise qualify for a proper permit issued by the department of liquor control. ***"

It is stipulated that the minimart is located in a general business district within which the retail sale of alcoholic beverages is a permitted use. Clearly, then, the city ordinance forbids and prohibits what the statute permits. In *Auxter* v. *Toledo, supra*, the supreme court invalidated a Toledo ordinance that required a city license to

sell beer. The court held that the Toledo license requirement essentially prohibited the state license holder from doing that which the state had permitted him to do. *Id.*, at 447. *Auxter* applies with force to this case. Despite allowing the sale of alcoholic beverages as a permitted use in a general business district, the City has further regulated such sales and nullified the state's authority to permit such sales. Under *Auxter* and the amended version of R.C. 4303.292, the state has preempted the field of liquor licensing. The City's attempt to further prohibit such sales conflicts with the state statutory scheme and must fail. The third, fourth and fifth assigned errors are sustained. Pursuant to App. R. 12(B) final judgment is entered for Sunoco.

*Judgment reversed,*
*and cause remanded*

SWEENEY, J. Concurs
DYKE, J., Dissents

DYKE, J., Dissents:

I must respectfully dissent. The journal entry is not a final appealable order. The journal entry did not contain the Civ. R. 54(B) language "no just reason for delay."

I agree that the trial court had no jurisdiction to rule on any constitutional claims. The trial court is barred from ruling on claims three and four until the court grants a Rule 21 motion to add or adds the attorney general on its own initiative. However, the journal entry failed to rule on the request for preliminary injunction and failed to rule on the claim concerning the applicability of the ordinance to appellant's facility.

I would dismiss the appeal *sua sponte*.

---

[1] The dissent argues with some efficacy that this court lacks jurisdiction to consider any part of this appeal because there is not a final appealable order under Civ. R. 54(B). In particular, it argues that the court failed to rule on the issue of (1) the request for a preliminary injunction and (2) the applicability of the city zoning ordinance. We agree that the court's journal entry could have addressed the questions raised in Sunoco's counterclaim for declaratory relief with greater precision. Nevertheless, we think the journal entry, when read as a whole, adequately disposes of the issues raised in the counterclaim in a manner that confers jurisdiction to this court.

The trial court did not rule on the request for a preliminary injunction. It did, however, proceed to grant a

permanent injunction after holding a hearing on the motion for a temporary restraining order. As the dissent notes, the proceedings were tinged with confusion. We must assume that the order granting the permanent injunction necessarily disposed of the request for a preliminary injunction. Indeed, it seems that the court could only grant the permanent injunction by implieldy granting the preliminary injunction as well.

We also believe that the trial court could not render judgment against Sunoco unless it found that the minimart was a service station as defined in the zoning ordinance. That determination was necessary predicate for rendering judgment, for if the minimart was not a "service station" as defined in the ordinance, the trial court's order would have no basis whatsoever.