CITY OF WESTLAKE, APPELLANT, *v.* MASCOT PETROLEUM
COMPANY, INC., D.B.A. SUNOCO SUNMART, APPELLEE.

[Cite as *Westlake v. Mascot Petroleum
Co.* (1991), 61 Ohio St.3d 161.]

(No. 90–1090—Submitted April 16, 1991—Decided July 24, 1991.)

*Patrick A. Gareau,* Director of Law, and *Robert C. McClelland,* for appellant.

*Calfee, Halter & Griswold, Wm. Tousley Smith* and *Ronald D. Holman II,* for appellee.

*Brian J. Melling* and *Clarence B. Rader III,* urging reversal for *amicus curiae,* Ohio Municipal League.

SWEENEY, J.

### I

The threshold issue submitted for our review concerns the procedural foundation necessary to maintain the present challenge to the Westlake municipal ordinance through the declaratory judgment mechanism. The instant action is governed by R.C. 2721.12, which provides:

"When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration. No declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding which involves the validity of a municipal ordinance or franchise, the municipal corporation shall be made a party and shall be heard, *and if any statute or the ordinance or franchise is alleged to be unconstitutional, the attorney general shall also be served with a copy of the proceeding and shall be heard.*" (Emphasis added.)

Where the unconstitutionality of a municipal ordinance is the expressed basis for declaratory relief, service of a copy of the proceeding upon the Attorney General is a jurisdictional requirement. Accordingly, the syllabus to *Malloy v. Westlake* (1977), 52 Ohio St.2d 103, 6 O.O.3d 329, 370 N.E.2d 457, provides as follows:

"Failure to serve the Attorney General under R.C. 2721.12 with a copy of the proceeding in a declaratory judgment action which challenges the constitutionality of an ordinance precludes a Court of Common Pleas from rendering declaratory relief in that action." See, also, *Sebastiani v. Youngstown* (1979), 60 Ohio St.2d 166, 14 O.O.3d 405, 398 N.E.2d 558.

Clearly, this result obtains regardless of whether the declaratory judgment action is initiated by complaint or responsive pleading.

The crucial inquiry, therefore, concerns the basis upon which the Westlake municipal ordinance is sought to be invalidated. It is readily apparent that appellee's counterclaim for declaratory relief, predicated upon the terms of the ordinance and, specifically, its definition of "automotive service station," is not of constitutional dimensions. Consequently, this aspect of the declaratory judgment action is not foreclosed by the failure of appellee to serve a copy of the counterclaim upon the Attorney General.

Appellant contends, however, that the preemption issue is constitutional in nature inasmuch as the conflict between the ordinance and state law necessarily involves an interpretation of the home rule authority of charter municipalities under Section 3, Article XVIII, Ohio Constitution. This argument is without merit. As an initial matter, the challenge initiated by appellee merely involves the contention that the ordinance in question is inconsistent with the regulatory framework established by R.C. Chapter 4303.

While the respective authority of municipalities and the state to legislate upon certain subjects involves a constitutional question, any conflict between state law and municipal ordinances is determined by reference to their operative provisions. Accordingly, while Section 3, Article XVIII provides that the authority of municipalities is limited to local police, sanitary and similar regulations not in conflict with state law, the specific provisions of the state legislation and the municipal ordinance govern whether a conflict exists. In determining whether a conflict does exist, a court refers to the language of the statute to determine whether the General Assembly intended to preempt local regulation on the subject. Inasmuch as the issue of preemption involves an interpretation of the state statute, the constitutionality of the ordinance is not at issue and the Attorney General need not be served with the complaint in order for the common pleas court to retain jurisdiction over the claim. Any constitutional issue would arise only after a conflict is determined to exist and then only where *appellant* seeks to invoke its home rule authority to *defeat* the application of state law.

However, even if we were to entertain the proposition that the Attorney General must be served whenever a *defense* to a declaratory judgment action is predicated upon constitutional grounds, no such defense was asserted by appellant herein. Throughout the course of this action, appellant has contended that no conflict exists between the state law and the municipal ordinance. Appellant has not advanced the argument that a conflict exists and that, pursuant to Section 3, Article XVIII, the local ordinance must prevail. Accordingly, no constitutional issues have been presented for resolution either as a basis for invalidating the ordinance or as a justification for its legality.

We therefore hold that, while R.C. 2721.12, which requires that the Attorney General be made a party to a declaratory judgment action challenging the constitutionality of a municipal ordinance, is applicable to proceedings initiated by way of counterclaim, it is not implicated where the sole allegation is that the ordinance is preempted by state law.

## II

Appellant further contends that its municipal ordinance prohibiting the sale of beer and wine by automotive service stations is not preempted by R.C. Chapter 4303. In support of this contention, appellant relies upon the decision of this court in *Ridgley, Inc. v. Wadsworth Bd. of Zoning Appeals* (1986), 28 Ohio St.3d 357, 28 OBR 420, 503 N.E.2d 1036. *Ridgley* involved a municipal ordinance adopted by the city of Wadsworth which contained a zoning restriction similar to the one at issue in the case *sub judice*. The appellant in *Ridgley* argued that the Wadsworth zoning regulation conflicted with the state's regulation of liquor sales, and was therefore invalid. In analyzing the argument, the majority in *Ridgley* considered R.C. 4303.292(A)(2)(a), which provided:

"The department of liquor control may refuse to issue, transfer the ownership of, or renew, and shall refuse to transfer the location of any retail permit issued under this chapter if it finds:

" * * *

"(2) That the place for which the permit is sought:

"(a) Does not conform to the building, safety, or health requirements of the governing body of the county or municipality in which the place is located. *This section shall not be construed to include local zoning ordinances*, nor shall the validity of local zoning regulations be affected by this section." (Emphasis added.) 137 Ohio Laws, Part I, 1870–1871.

In a four-to-three decision issued December 30, 1986, the majority in *Ridgley* held that R.C. 4303.292(A)(2)(a) barred the state from issuing a liquor permit to a business located in an area where the sale of alcohol is prohibited by a zoning ordinance. The syllabus in *Ridgley* provides:

"A municipality is not preempted by operation of state law from promulgating and enforcing zoning ordinances limiting the retail sale of alcoholic beverages within the municipal corporate boundaries."

In contrast, the dissenting justices in *Ridgley* argued that the state intended by its enactment of R.C. Title 43 to preempt local regulation of liquor sales, and that R.C. 4303.292(A)(2)(a) was never intended to allow municipalities to regulate such sales through zoning. Rather, the dissenting opinions ex-

pressed the view that local control of liquor sales was limited to the mechanisms specifically provided by R.C. Title 43. *E.g., id.* at 365, 28 OBR at 427, 503 N.E.2d at 1042 (Sweeney, J., dissenting).

Effective July 1, 1987, R.C. 4303.292 was amended by the legislature to provide as follows:

"(A) The department of liquor control may refuse to issue, transfer the ownership of, or renew, and shall refuse to transfer the location of any retail permit issued under this chapter if it finds:

" * * *

"(2) That the place for which the permit is sought:

"(a) Does not conform to the building, safety, or health requirements of the governing body of the county or municipality in which the place is located. *As used in division (A)(2)(a) of this section, 'building, safety, or health requirements' does not include local zoning ordinances. The validity of local zoning regulations shall not be affected by this section.*" (Emphasis added to indicate amended portion.) 142 Ohio Laws, Part II, 3618–3619.

Moreover, R.C. 4303.26 was amended on the same date to provide in relevant part:

"Applications for regular permits authorized by sections 4303.02 to 4303.23 of the Revised Code may be filed with the department of liquor control. No permit shall be issued by the department until fifteen days after the application for it is filed. When an application for a new class C or D permit is filed, when class C or D permits become available, when an application for transfer of ownership of a class C or D permit or transfer of a location of a class C or D permit is filed, or when an application for an F–2 permit is filed, no permit shall be issued, nor shall the location or the ownership of a permit be transferred, by the department until the department notifies the legislative authority of the municipal corporation, if the business or event is or is to be located within the corporate limits of a municipal corporation, or the clerk of the board of county commissioners and township trustees in the county in which the business or event is or is to be conducted, if the business is or is to be located outside the corporate limits of a municipal corporation, and an opportunity is provided officials or employees of the municipal corporation or county and township, who shall be designated by the legislative authority of the municipal corporation or the board of county commissioners or township trustees, for a complete hearing upon the advisability of the issuance, transfer of ownership, or transfer of location of the permit. *In this hearing, no objection to the issuance, transfer of ownership, or transfer of location of the permit shall be based upon noncompliance of the proposed permit*

*premises with local zoning regulations which prohibit the sale of beer or intoxicating liquor, in an area zoned for commercial or industrial uses, for a permit premises that would otherwise qualify for a proper permit issued by the department of liquor control."* (Emphasis added to indicate language supplied by amendment.) 142 Ohio Laws, Part II, 3616–3617.

It is evident from the language of the amendments that the exclusive authority to regulate the sale and consumption of alcoholic beverages is vested in the Ohio Department of Liquor Control and the Ohio Liquor Control Commission.

Were not the clear language of R.C. 4303.26, as amended, sufficient to evidence this legislative intent, Section 3, Am.Sub.H.B. No. 419, the bill containing the amendments, provides as follows:

"The legislative intent of this act is to specify that only the residents of a community have the right to approve or disapprove the sale of alcoholic beverages through the statutory provisions authorizing a local option election, that if sales of such beverages are approved, the primary authority to regulate the sale of alcoholic beverages is delegated to the Department of Liquor Control, and that the legislative or executive authority of a political subdivision has only such rights or powers with regard to these sales as are expressly granted under Chapter 4303. of the Revised Code." 142 Ohio Laws, Part II, 3675.

Thus, the language and intent of the amendments are wholly consistent with the view of the prior law expressed by the dissenting opinions in *Ridgley*. Assuming *arguendo* that any ambiguity remains, the rules of statutory construction contained in R.C. 1.49 remove all doubt. This section provides as follows:

"If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters:

"(A) The object sought to be attained;

"(B) The circumstances under which the statute was enacted;

"(C) The legislative history;

"(D) The common law or former statutory provisions, including laws upon the same or similar subjects;

"(E) The consequences of a particular construction;

"(F) The administrative construction of the statute."

R.C. 4303.26 and 4303.292 could not be any less ambiguous. However, if such were the case, resort to R.C. 1.49 assists their proper construction in several ways. The object to be obtained by the amendments was clearly to

supersede the decision in *Ridgley.* R.C. 1.49(A). To our knowledge, no other event occurred which would have provoked the legislative action. Likewise, the circumstances of the statutory enactment (occurring less than six months after the *Ridgley* decision) evidence the reason for legislative attention. R.C. 1.49(B). The legislative history is very explicit. R.C. 1.49(C). Section 3 of the amending bill sets forth the reasons why the General Assembly felt it necessary to amend the statute. Likewise, the knowledge possessed by the General Assembly of former statutory provisions as interpreted by this court not only may be presumed but may be considered to have been the motivating factor behind the amendments. R.C. 1.49(D).

We therefore hold that where a business entity operating in a commercial or industrial district has been issued a valid permit for the sale of alcoholic beverages by the Ohio Department of Liquor Control, a municipality is without authority to extinguish privileges arising thereunder through the enforcement of zoning regulations.

Inasmuch as it is our conclusion that appellant could not, through its zoning powers, divest appellee of its permit privileges, it is unnecessary for us to determine whether the operation of appellee is encompassed within the definition of "automotive service station" contained in W.C. Section 1203.05(f).

The judgment of the court of appeals is therefore affirmed.

*Judgment affirmed.*

MOYER, C.J., HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.