OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Justine Michael, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

     Ohio Association of Private Detective Agencies, Inc.,
Appellant, v. City of North Olmsted, Appellee.
     [Cite as Ohio Assn. of Private Detective Agencies, Inc. v.
N. Olmsted (1992),      Ohio St.3d     .]
Municipal corporations -- Ordinance which exacts a fee for
     registration of private investigators constitutes a local
     police regulation -- Fee provision in such ordinance which
     conflicts with statewide regulatory program established
     pursuant to R.C. Chapter 4749 is rendered invalid by
     operation of Section 3, Article XVIII of the Ohio
     Constitution.
A municipal ordinance which attempts to exact a fee for the
     registration or licensure of private investigators,
     security guard providers or their employees constitutes a
     local police regulation.  Where the fee provision in such
     ordinance conflicts with the statewide regulatory program
     established pursuant to R.C. Chapter 4749 and,
     specifically, the prohibition against the imposition of
     such fees contained in R.C. 4749.09, it is rendered
     invalid by operation of Section 3, Article XVIII of the
     Ohio Constitution.
     (No. 91-1886 -- Submitted September 22, 1992 -- Decided
December 16, 1992.)
     Appeal from the Court of Appeals for Cuyahoga County, No.
58914.
     On March 20, 1979, the City Council of appellee, city of
North Olmsted, enacted Ordinance No. 79-27.  It provides:
     "BE IT ORDAINED BY THE COUNCIL OF THE CITY OF NORTH
OLMSTED, COUNTY OF CUYAHOGA AND STATE OF OHIO:
     "SECTION 1:  That any person who is employed in the City
of North Olmsted to act as either a private policeman, special
investigator, security guard, or by whatever, named [sic]
called, whether said individual carries a firearm or not, shall
be required to register with the Police Department prior to
being employed within the City of North Olmsted.
     "SECTION 2:  That the Registration Fee shall be fifteen
dollars ($15.00) for any individual registering with the Police
Department, in compliance with Section 1 hereof.

"Section 3:  That the Director of Public Safety shall prepare a registration form, together with rules and regulations governing the registration of all individuals coming within the scope of the requirements of this Ordinance.

"Section 4:  That any person who violates the provisions of this Ordinance shall be guilty of a minor misdemeanor.

"Section 5:  This Ordinance shall take effect and be in force from and after the earliest period allowed by law." (Emphasis added.)

Effective November 27, 1985, R.C. 4749.09 was amended to provide as follows:

"Any class A, B, or C licensee, or registered employee of a class A, B, or C licensee, who operates in a municipal corporation that provides by ordinance for the licensing, registering, or regulation of private investigators, security guard providers, or their employees shall conform to those ordinances insofar as they do not conflict with this chapter. No license or registration fees shall be charged by the state or any of its subdivisions for conducting the business of private investigation, the business of security services, or both businesses other than as provided in this chapter." (Emphasis added.)

On February 27, 1987, plaintiff-appellant, Ohio Association of Private Detective Agencies, Inc., instituted the present declaratory judgment action in the Cuyahoga County Court of Common Pleas, seeking a judicial determination that the North Olmsted ordinance was in conflict with the state statute insofar as it attempted to exact a local fee for the registration of private security personnel and, thus, was unconstitutional.  On February 13, 1989, appellant filed a motion for summary judgment.  On November 8, 1989, the court granted the motion.  On July 18, 1991, the court of appeals reversed.

The cause is now before this court pursuant to the allowance of a motion to certify the record.

Petro, Rodemaker, Matty & McClelland, Robert C. McClelland and Kirk R. Henrikson; Fedor, Kaman & Ott and Dennis G. Fedor, for appellant.

Michael R. Gareau, Director of Law, and James M. Dubelko, for appellee.

Thompson, Hine & Flory, Daniel W. Hammer and Stephen F. Gladstone, urging reversal for amici curiae, Brink's Incorporated and Independent Armored Car Operators Association, Incorporated.

Lee I. Fisher, Attorney General, and Christopher B. McNeil, Assistant Attorney General, urging reversal for amicus curiae, Ohio Department of Commerce, Division of Licensing.

Sweeney, J.   Resolution of the present controversy requires consideration of the home-rule authority of the city of North Olmsted -- a charter municipality.  The authority of a charter municipality to legislate regarding particular subjects is governed by Section 3, Article XVIII of the Ohio Constitution.  This provision provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within

their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." (Emphasis added.)

In State ex rel. Canada v. Phillips (1958), 168 Ohio St. 191, 5 O.O.2d 481, 151 N.E.2d 722, paragraph four of the syllabus, this court interpreted the foregoing language as follows:

"The words, 'as are not in conflict with general laws' found in Section 3 of Article XVIII of the Constitution, modify the words 'local police, sanitary and other similar regulations' but do not modify the words 'powers of local self-government.'"

Accordingly, in Auxter v. Toledo (1962), 173 Ohio St. 444, 20 O.O.2d 71, 183 N.E.2d 920, the court intimated that a three-step process is involved in determining whether a municipal ordinance must yield to the provisions of a state statute. Initially, it must be ascertained whether the local ordinance seeks to exercise a power of local self-government or constitutes a police regulation. In Auxter, supra, at 446, 20 O.O.2d at 72, 183 N.E.2d at 922, the court observed that:

"* * * [A]ny municipal ordinance, which prohibits the doing of something without a municipal license to do it, is a police regulation within the meaning of Section 3 of Article XVIII of the Ohio Constitution."

Appellee attempts to distinguish Auxter from the instant case by contending that it seeks not to "license" but to "register" security personnel. This argument is without merit. Whatever the distinction may be between licensing and registration, such distinction does not convert the latter into the exercise of a power of local self-government. Regulation of private employment can hardly be argued to be a matter involving the structure or operation of a charter municipality.

The second inquiry involves a determination of whether the state legislation is a general or special provision. Id. at 447-448, 20 O.O.2d at 73, 183 N.E.2d at 923. A general law has been described as one which promotes statewide uniformity. Thus, in State ex rel. McElroy v. Akron (1962), 173 Ohio St. 189, 194, 19 O.O.2d 3, 6, 181 N.E.2d 26, 30, it was observed:

"Once a matter has become of such general interest that it is necessary to make it subject to statewide control so as to require uniform statewide regulation, the municipality can no longer legislate in the field so as to conflict with the state."

In Westlake v. Mascot Petroleum Co. (1991), 61 Ohio St.3d 161, 573 N.E.2d 1068, this court concluded that a statewide permit scheme (i.e., liquor sales regulation) precluded local enactments on the same subject which were inconsistent therewith. In the present case, R.C. 4749.09 prohibits the imposition of a local registration fee for private security personnel.

Considered in isolation, such a provision may fail to qualify as a general law because it prohibits a municipality from exercising a local police power while not providing for uniform statewide regulation of the same subject matter. See Youngstown v. Evans (1929), 121 Ohio St. 342, 168 N.E. 844. However, consideration of R.C. 4749.09 alone is not dispositive of the present controversy. R.C. Chapter 4749 in its entirety does provide for uniform statewide regulation of security

personnel in the same manner that R.C. Chapter 4303 provided for statewide liquor sales regulation in Mascot, supra. Accordingly, R.C. 4749.09 must be considered a general law of statewide application.

The final inquiry concerns whether a conflict exists between the state and local provisions. Auxter, supra, 173 Ohio St. at 448, 20 O.O.2d at 73, 183 N.E.2d at 923. While the appellate court conceded that a conflict existed, it nevertheless concluded that the local ordinance validly exacted a fee because the state law was not deemed to be one of general application. Nonetheless, appellee attempts to address the conflict issue. Appellee contends that no conflict exists because the ordinance neither can nor does attempt to prohibit the practice of private investigation within the city of Westlake. Rather, appellee maintains that the ordinance merely requires that members of the regulated profession register with the municipality. Despite this resourceful argument, appellee ignores the fact that the failure to register and pay the registration fee precludes security personnel from working in the municipality and exposes them to misdemeanor liability if they attempt to do so.

Consequently, inasmuch as the local ordinance restricts an activity which a state license permits, the ordinance is in conflict with a general law of the state and violates Section 3, Article XVIII of the Ohio Constitution.

We therefore conclude that a municipal ordinance which attempts to exact a fee for the registration or licensure of private investigators, security guard providers or their employees, constitutes a local police regulation. Where, as here, the fee provision in such ordinance conflicts with the statewide regulatory program established pursuant to R.C. Chapter 4749 and, specifically, the prohibition against the imposition of such fees contained in R.C. 4749.09, it is rendered invalid by operation of Section 3, Article XVIII of the Ohio Constitution.

Accordingly, the judgment of the court of appeals is reversed and the cause is remanded to the court of common pleas for proceedings in accordance with this opinion.

Judgment reversed
and cause remanded.

Moyer, C.J., Douglas, H. Brown and Resnick, JJ., concur.
Holmes and Wright, JJ., dissent.

Wright, J., dissenting. I respectfully dissent. The court's decision reflects a misunderstanding of the scope and purpose of the Home Rule Amendment to the Ohio Constitution and seriously undermines the constitutionally protected power of municipal corporations. I am writing to explain my disagreement with the court over a single, but crucial, element of its analysis.

I

In deciding this appeal, the court correctly used the three-step process outlined in Auxter v. Toledo (1962), 173 Ohio St. 444, 20 O.O.2d 71, 183 N.E.2d 920. The court also properly applied the facts of this case to the first and third steps in that process. I do not disagree with the holding that the North Olmsted ordinance constitutes a police regulation or

the conclusion that the ordinance directly conflicts with R.C. 4749.09.

I do disagree, however, with the court's treatment of the second step in the three-step process. That step requires the court to determine whether R.C. 4749.09 is a "general law" under Section 3, Article XVIII of the Ohio Constitution, the Home Rule Amendment ("Amendment"). Id. at 447-448, 20 O.O.2d at 73, 183 N.E.2d at 923. The majority holds that, merely because it is part of R.C. Chapter 4749, "R.C. 4749.09 must be considered a general law of statewide application." Following this determination the court was forced to conclude, under Auxter, that the North Olmsted ordinance impermissibly conflicts with a "general law" and is therefore rendered invalid by operation of the Home Rule Amendment.

Because I cannot agree that the Home Rule Amendment affords municipal corporations such hollow protection, I must dissent.

II

To understand the term "general laws" one must first study the purpose and scope of the Home Rule Amendment. Prior to 1912, political subdivisions of the state derived their authority to act from legislation passed by the General Assembly. In 1912, however, Article XVIII of the Ohio Constitution was adopted. Section 3 of Article XVIII provides: "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary, and other similar regulations as are not in conflict with general laws." Shortly after the Amendment was adopted, this court explained that "[t]he manifest purpose of the amendment in 1912 was to * * * add to the governmental status of the municipalities. The people made a new distribution of governmental power." Billings v. Cleveland Ry. Co. (1915), 92 Ohio St. 478, 483, 111 N.E. 155, 156. Municipal corporation were thus vested with constitutional power to adopt police regulations without the imprimatur of the legislature. Vaubel, Municipal Corporations and the Police Power in Ohio (1968), 29 Ohio St.L.J. 29, 30.

The Home Rule Amendment gives municipal corporations the power to enact two sorts of ordinances: (1) ordinances that exercise powers of local self-government and (2) police, sanitary, and other similar regulations as are not in conflict with the general laws. See State ex rel. Arey v. Sherrill (1944), 142 Ohio St. 574, 578-579, 27 O.O. 505, 507, 53 N.E.2d 501, 504. As observed by the majority, it is the second type of ordinance with which we are concerned in this case. In providing municipal corporations with the power to enact police regulations, the drafters of the Amendment engaged in delicate balancing: on one hand they gave municipal corporations broad power to enact such regulations, on the other they recognized "that police, sanitary and other similar regulations were not purely local matters and therefore should continue to be controlled by general law." (Emphasis sic.) Arey, supra, at 578-579, 27 O.O. at 507, 53 N.E.2d at 504. We have the duty to interpret the Home Rule Amendment in a way that respects both municipal autonomy and the need for uniform application of general laws. The key to this task lies in defining the term "general laws" with both precision and consistency.

In West Jefferson v. Robinson (1965), 1 Ohio St.2d 113, 30 O.O.2d 474, 205 N.E.2d 382, this court defined "general laws" in a way that balances the interest of municipal autonomy with the interest of uniform application of laws enacted by the General Assembly. "[G]eneral laws," the court held, are "statutes setting forth police, sanitary or similar regulations and not statutes which purport only to grant or to limit the legislative powers of a municipal corporation to adopt or enforce police, sanitary or other similar regulations." Id. at paragraph three of the syllabus. This rule recognizes the principle that the General Assembly can enact laws that regulate the conduct of people in this state; but it cannot enact a law the sole purpose of which is to strip constitutionally granted power from a municipal corporation.

One commentator explains:

"As they do not include enabling laws, 'general laws' do not encompass legislative efforts to restrict power granted to the municipal corporation by the people through their constitution, unless that constitution so provides. The only express limitation upon municipal Home Rule is the 'no conflict' provision. As has already been seen, the provision has not been construed to authorize the state to exclude a municipality from a field by means of the state's own regulation of the field--to preempt the field. It would seem even more clear that this provision is not to be construed as justifying a simple denial of power. Moreover, so to construe it would create the incongruous situation of retaining in a large area of municipal affairs a two step legislative enabling power, through withdrawal and rebestowal. Rather than establishing self-government, this interpretation of the amendment would make the position of the municipality worse than it had been before, as it would subject it to the necessity of running the gauntlet of interpretation twice. Then too, if this was intended, the language used, 'not in conflict with general laws,' seems inappropriate in comparison with what might have been used, such as, 'except as denied by the legislature' or, even, 'to the extent granted by the legislature.'" (Emphasis added.) Vaubel, supra, at 63-64.

General laws are those laws "operating uniformly throughout the state, * * * which prescribe a rule of conduct upon citizens generally * * *," Garcia v. Siffrin (1980), 63 Ohio St.2d 259, 271, 17 O.O.3d 167, 174, 407 N.E.2d 1369, 1377-1378 (citing Schneiderman v. Sesanstein [1929], 121 Ohio St. 80, 167 N.E. 158), not laws that regulate the power of municipal corporations. A law that simply grants or denies municipal power is not a general law because the power to enact ordinances already has been granted to municipal corporations by the Ohio Constitution. If it were otherwise, the grant of power contained in the Home Rule Amendment would be a nullity and we would return to the time before 1912 when the legislature completely controlled the scope of municipal power.

Youngstown v. Evans (1929), 121 Ohio St. 342, 168 N.E. 844, is on point. In Evans, a state statute provided that municipalities could make the violation of a city ordinance a misdemeanor and could punish violators by fine or imprisonment. The statute also established maximum limits for those penalties. The cities of Cleveland and Youngstown,

however, had ordinances with penalties in excess of what was permitted by the statute.  Faced with this conflict, this court held that the provision of the state statute setting maximum penalties was nothing more than a limitation on municipal power and therefore was not a general law.  The court wrote that the state statute "is a general law in the limited sense that it operates uniformly throughout the state.  It is not a general law in the sense of prescribing a rule of conduct upon citizens generally.  It is a limitation upon law making by municipal legislative bodies."  Id. at 345, 168 N.E. at 845.  The court upheld the validity of the city ordinances.  The Evans case stands firmly for the proposition that the state cannot simply deny municipal corporations law-making power.

Therefore, in determining whether R.C. 4749.09 is a general law, the question is whether it is a law that regulates people's conduct or is a denial of municipal power.  I believe that this statute is merely an attempt to limit municipal power.

III

The court of appeals correctly held that R.C. 4749.09 is not a general law under Section 3, Article XVIII of the Ohio Constitution.  Judge Patton, writing for a unanimous appellate panel, concluded that the statute does not create a uniform regulatory scheme for private investigators and other security providers.  Moreover, as stated by the appellate court, the provision of R.C. 4749.09 that conflicts with the North Olmsted ordinance seeks "only to limit the legislative power of a municipality to enforce a fee schedule for the license or registration of those engaged in the business of private investigators * * *."  I certainly agree with both of these conclusions.

First, R.C. Chapter 4749 does not seek to provide uniform statewide regulation of security providers.  It is not a comprehensive regulatory statute.  The first part of the first sentence of R.C. 4749.09 recognizes the power of local government to license security providers.1  It is counterintuitive to describe a state regulatory statute as "uniform" when, by its own terms, it allows political subdivisions to register, regulate, and license the regulatory target.

The second part of the first sentence of R.C. 4749.09 purports to limit the ability of municipal corporations to regulate security providers by stating that such regulation may not conflict with R.C. Chapter 4749.  At the very most, this provision merely restates the mandate of Section 3 of Article XVIII, forbidding a local police regulation from conflicting with a general law.  As read by the majority, however, the provision goes far beyond the command of Article XVIII and prohibits any conflict with R.C. Chapter 4749, whether the provisions of that chapter are general laws or not.  This the General Assembly cannot do.  As discussed above, Section 3 of Article XVIII is an independant grant of power to municipal corporations.  This power cannot be limited by legislative fiat; it can only be limited by the passage of a law intended to regulate the conduct of the people--a general law.

Second, the final sentence of R.C. 4749.09 specifically prohibits political subdivisions of the state from charging security providers a license or registration fee.2  As the

majority correctly observes, considered alone this provision is certainly not a general law because it is merely a limitation on municipal police power. However, even read in the context of R.C. Chapter 4749 as a whole, R.C. 4749.09 cannot be judged a general law. The purpose of R.C. Chapter 4749 is quite clear. It is to protect the public against wrongful acts by security providers who, in the absence of government control, "would be in a position to cause irreparable harm to other members of the community because of the very nature of their work." Schauder v. Weiss (Sup. Ct. 1949), 88 N.Y.S.2d 317, 321. R.C. 4749.09 in no way furthers this legislative purpose. It is not a general law because it is not a logical part of the legislative scheme to regulate the conduct of security providers; it is designed only to restrict the power of municipal government.

The reasoning used to uphold the validity of a local ordinance in Garcia v. Siffrin, supra, is applicable here. R.C. 4749.09 should not be considered a general law because it is "not reasonably related to the valid purposes and objectives of the regulatory and licensing portions of the other sections of this chapter of law." Id., 63 Ohio St.2d at 271, 17 O.O.3d at 174, 407 N.E.2d at 1378. As was the case with the state statute in question in Garcia, R.C. 4749.09 "selectively excise[s] certain of the police powers of local government that have been granted to municipalities by the Constitution." Id.

North Olmsted's power to enact a police regulation licensing security providers comes from the Constitution and is recognized in the first sentence of R.C. 4749.09. Its corresponding power to charge a fee for a license cannot be arbitrarily denied by the legislature. Because R.C. 4749.09 is not a general law, the North Olmsted ordinance is valid and enforceable despite the conflict.

IV

There are three identifiable problems with the majority's analysis. First, the majority ignores precedent. As previously discussed, West Jefferson v. Robinson states the well-settled definition of "general laws." According to my research, this court has approved the West Jefferson definition six times without criticism,[3] including once very recently in a unanimous opinion. See Rispo Realty & Dev. Co. v. Parma (1990), 55 Ohio St.3d 101, 103, 564 N.E.2d 425, 427. Even if the definition were not supported by sound constitutional law, it warrants discussion in the majority opinion because it is the accepted definition of "general laws" and it was expressly relied upon by the court of appeals.

Second, the majority relies heavily on cases that are patently distinguishable from this case because they involved comprehensive regulatory statutes. In State ex rel. McElroy v. Akron (1962), 173 Ohio St. 189, 19 O.O.2d 3, 181 N.E.2d 26, a state statute required that all watercraft operated in the state have state licenses, imposed a licensing fee that was held to be an excise tax, and stated that no political subdivision could require an additional license or fee from watercraft operators. This case appears to have convinced the majority to hold that the North Olmsted licensing fee is impermissible because the state itself requires a license and a licensing fee of security providers. See R.C. 4749.03(B)(4).

McElroy, however, is distinguishable because it involved a comprehensive state regulatory statute--control over watercraft licensing was completely regulated by the state.  In the instant case the state statute does not purport to be a comprehensive regulatory statute, it undisputably permits municipal "licensing, registering, or regulation."  The second sentence of R.C. 4749.09 is nothing more than an isolated, specific limitation on municipal power.

Like McElroy, Westlake v. Mascot Petroleum Co., Inc. (1991), 61 Ohio St.3d 161, 573 N.E.2d 1068, involved a comprehensive statewide regulatory scheme.  Under the liquor permit statute involved in Westlake, "exclusive authority to regulate the sale and consumption of alcoholic beverages is vested in the Ohio Department of Liquor Control and the Ohio Liquor Control Commission."  Id. at 167, 573 N.E.2d at 1073.  Therefore, the city of Westlake's attempt to enforce a zoning regulation to extinguish privileges arising from a valid state liquor permit was held to be impermissible.  Again, the factor that distinguishes Westlake from our case is that the liquor licensing statute created a comprehensive regulatory scheme while R.C. Chapter 4749 does not.

Finally, it is my view that today's decision creates bad constitutional precedent.  The majority's analysis "entirely ignores the very essential fact that the powers of municipalities are now conferred by the Constitution and not by the Legislature."  Akron v. Scalera (1939), 135 Ohio St. 65, 68, 13 O.O. 376, 378, 19 N.E.2d 279, 280.  Today's decision permits the General Assembly, by legislative fiat, to infringe on power granted to municipal corporations by the Constitution.

The value of the rule of West Jefferson, and the reason why we should follow it in this case, is that it protects local governments from gratuitous state legislation.  I fail to see how the licensing fee prohibition in R.C. 4749.09 is part of a comprehensive regulatory scheme.  In fact, I cannot see how a statute that recognizes the power of municipal corporations to regulate can be called "comprehensive" at all.  The licensing fee prohibition seems to be nothing more than a nod to the lobbyists for private detectives and security providers--a gesture that strikes at the very heart of the protection provided municipal corporations by Section 3, Article XVIII of the Ohio Constitution and the definition of "general laws" from the West Jefferson case.

I would affirm the court of appeals on the ground that R.C. 4749.09 is not a general law.

Holmes, J., concurs in the foregoing dissenting opinion.

FOOTNOTES:

1  The first sentence of R.C. 4749.09 provides:  "Any class A, B, or C licensee, or registered employee of a class A, B, or C licensee, who operates in a municipal corporation that provides by ordinance for the licensing, registering, or regulation of private investigators, security guard providers, or their employees shall conform to those ordinances insofar as they do not conflict with this chapter."

2  The second sentence of R.C. 4749.09 provides:  "No license or registration fees shall be charged by the state or any of its subdivisions for conducting the business of private

investigation, the business of security services, or both businesses other than as provided in this chapter."

3  See Niles v. Howard (1984), 12 Ohio St.3d 162, 164, 12 OBR 232, 233-234, 466 N.E.2d 539, 540-541; Clermont Environmental Reclamation Co. v. Wiederhold (1982), 2 Ohio St.3d 44, 48, 2 OBR 587, 591, 442 N.E.2d 1278, 1281; Eastlake v. Ohio Bd. of Bldg. Standards (1981), 66 Ohio St.2d 363, 368, 20 O.O.3d 327, 330, 422 N.E.2d 598, 601; Garcia v. Siffrin (1980), 63 Ohio St.2d 259, 271, 17 O.O.3d 167, 174, 407 N.E.2d 1369, 1377; Columbus v. Molt (1973), 36 Ohio St.2d 94, 95, 65 O.O.2d 244, 244, 304 N.E.2d 245, 246.