TEX–1, INC., Appellant,

v.

CITY OF DAYTON BOARD OF ZONING APPEALS, Appellee.

[Cite as *Tex–1, Inc. v. Dayton Bd. of Zoning Appeals* (2001), 143 Ohio App.3d 636.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 18571.

Decided May 25, 2001.

*Richard S. Skelton,* for appellant.

*J. Rita McNeil,* Dayton Director of Law, for appellee.

FAIN, Judge.

Appellant Tex–1, Inc. filed an application for a conditional use permit for the operation of a microbrewery and restaurant in the city of Dayton. The Dayton Board of Zoning Appeals ("BZA") denied the application. Tex–1 appealed the denial to the Montgomery County Common Pleas Court, which affirmed the decision of the BZA. On appeal to this court, Tex–1 contends that the trial court erred in affirming the decision of the BZA because that decision is not supported by the evidence. Tex–1 further contends that the trial court erred in affirming the decision of the BZA because the denial of the conditional use constituted an unconstitutional taking of its property and also improperly extinguished the rights provided to it under Ohio liquor laws.

We have reviewed the record and conclude that the trial court did not abuse its discretion in affirming the decision of the BZA, which is supported by a preponderance of reliable, probative, and substantial evidence. We also conclude that Tex–1's enjoyment of its property has not been so curtailed as to constitute an unconstitutional taking. Finally, we conclude that the granting, or prospective granting, by the Ohio Department of Liquor Control of a permit for the manufacture of intoxicating beverages does not prevent a local zoning authority from regulating the location of breweries pursuant to a zoning scheme. Accordingly, the judgment of the trial court is affirmed.

I

On March 5, 1998, Tex–1 filed an application for a conditional use permit to operate a microbrewery and restaurant at its property located at 11 Brown Street in the historic Oregon District of Dayton.[1] The property is in an area that is zoned B–2/HD–2, which is a business district with an overlying historical district. The street on which the Tex–1 property is located is primarily residential. The microbrewery/restaurant, which would have a seating capacity of one hundred thirty-five, was tentatively named "Razoo's."

A hearing on the application was held on March 24, 1998 but was continued to June 9, 1998. On that date, Tex–1 presented evidence and testimony in support of its application; the Oregon Historical District Society ("OHDS") presented evidence and testimony in opposition. Following the hearing, the BZA denied the conditional use permit on the basis that it did not meet the criteria set forth

---

1. Tex–1 originally submitted plans for a bar but was informed that a bar is neither a permitted use nor a conditional use in the zoning district. Thereafter, Tex–1 amended its proposed use to include a restaurant.

in R.C. 150.457 of the City of Dayton Revised Code of General Ordinances ("R.C.G.O.").

Tex–1 appealed to the Montgomery County Common Pleas Court. The matter was referred to a magistrate, who issued a decision affirming the BZA's denial of the application. Tex–1 then filed objections to the trial court, but the court, with some modification, adopted the magistrate's decision. Tex–1 now appeals from the judgment of the trial court.

## II

The first assignment of error is as follows:

"The magistrate and trial court erred by overruling appellant's assignment of error that the Board of Zoning Appeals' decision was unsupported by the preponderance of substantial, reliable, probative evidence, was against its own staff report and as such was unreasonable, unconstitutional, arbitrary and capricious."

Tex–1 contends that the decision of the BZA is not supported by the evidence and that the trial court therefore erred in affirming the denial of its application.

In analyzing this issue, we first discuss the appropriate standard of review. "A court of common pleas should not substitute its judgment for that of an administrative board, such as the [BZA], unless the court finds that there is not a preponderance of reliable, probative and substantial evidence to support the board's decision." *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 29, 465 N.E.2d 848, 852. In determining whether the standard of review is correctly applied by the court of common pleas, the court of appeals has a limited function. *Id.*, quoting, *Dudukovich v. Lorain Metro. Hous. Auth.* (1979), 58 Ohio St.2d 202, 207, 12 O.O.3d 198, 201–202, 389 N.E.2d 1113, 1117. The appellate court must affirm the court of common pleas unless it finds, "as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence." *Id.* With this standard in mind, we must examine the record to determine whether the trial court erred in affirming the decision of the BZA.

As previously noted, the BZA denied the application for the conditional use on the grounds that it did not satisfy all the criteria of R.C.G.O. 150.457. The portion of the ordinances on which the BZA based its decision provides as follows:

"The Board shall not grant a conditional use permit unless it shall, in each specific case, make specific findings of fact directly based upon the particular evidence presented to it, that support conclusions that:

"* * *

"(F) the location and size of the conditional use, the nature and intensity of the operation involved or conducted in connection with it, the size of the site in relation to it, and the location of the site with respect to the streets giving access to it, shall be such that it will be in harmony with the appropriate and orderly development of the district in which it is located.

"(G) the location, nature and height of the buildings, structures, walls and fences of the site and the nature and extent of landscaping and screening on the site shall be such that the use will not unreasonably hinder or discourage the appropriate development, use and enjoyment of the adjacent land, buildings or structures.

"(H) the proposed conditional use will not cause substantial injury to the value of other property in the neighborhood in which it is located and will contribute to and promote the convenience and welfare of the public."

 The trial court found that the decision of the BZA is supported by reliable, probative, and substantial evidence. With regard to R.C.G.O. 150.457(F), the lower court found that the evidence demonstrated that the size and intensity of the proposed restaurant/microbrewery was "expansive." It would be able to seat over one hundred people at a time. The facility is located on a street which is mainly residential. The evidence also demonstrated that the residents in that area already have constant problems with patrons of the other bars in the area—specifically, problems with vandalism, littering, trespassing, noise, and traffic flow. The evidence also showed that the area lacks adequate police enforcement. The lower court found that opening a facility of the size proposed by Tex–1 would exacerbate these already-existing problems.

 With regard to R.C.G.O. 150.457(G), the evidence again supports a finding that the street on which the property is located is primarily residential. In fact, the Tex–1 property is located only fourteen feet from an apartment building. Tex–1 did not submit any plans for screening, landscaping, fencing, or shrubbery to mitigate the anticipated noise. In fact, the evidence supports a finding that the noise and congestion could not be diminished, but would only increase. Residents of the area testified to the noise, vandalism, littering, and other nuisances to which they were subjected as a result of the establishments already in the area. The trial court agreed that the addition of the Tex–1 operation would hinder development, use, and enjoyment of the surrounding properties.

Finally, with regard to R.C.G.O. 150.457(H), Tex–1 submitted letters indicating that the surrounding property would not be harmed and that the property values would, in fact, increase. However, letters submitted by the OHDS indicated the opposite. Additionally, the OHDS presented witnesses who testified concerning the negative impact that the microbrewery would have on the surrounding

properties. The BZA found, and the lower court agreed, that the evidence supported a finding that property values would be lowered as a result of the addition of the microbrewery.

We note that Tex–1 also argues that the BZA's findings are contrary to the recommendations made by the city of Dayton staff in its report on the proposed operation. That staff report found that the Tex–1 proposed use met the requirements of the Dayton Ordinances. Tex–1 thus argues that the finding of the BZA was erroneous and that the trial court erred in affirming that decision. The Dayton staff report, which we have reviewed, merely indicates that the proposed facility "should" meet the requirements of the Dayton Ordinances.

The trial court noted that the BZA had the report before it when it made its decision. The trial court also noted that the report was merely one part of the evidence presented and that the BZA made its decision based upon all the evidence presented. The fact that the BZA failed to place greater weight on the report did not render its finding erroneous. The trial court found that even when considered in light of the staff report, the decision of the BZA is supported by a preponderance of the evidence. We agree. From our review of the record, we find that there is evidence to support the finding of the BZA and the lower court. Therefore, we cannot say that the trial court abused its discretion by affirming the decision of the BZA.

The first assignment of error is overruled.

### III

The second assignment of error is as follows:

"The magistrate and trial court erred by overruling appellant's assignment of error that the Board of Zoning Appeals' decision denying appellant's application herein constitutes a taking of property in violation of the Ohio Constitution and the Constitution of the United States of America."

Tex–1 contends that the trial court erred in rejecting its argument that the decision of the BZA constituted an unlawful taking of its property. In support, Tex–1 argues that it purchased the subject property for use as a restaurant and microbrewery, but that because of the BZA's denial of its request for a conditional use, it cannot use the property as intended. Therefore, it contends that the denial of the conditional use constitutes a taking of its property because the zoning regulations "rendered its property valueless without corresponding benefit or compensation."

In cases in which a landowner alleges that a taking has occurred because of a municipality's application of its zoning ordinances to the property, the

landowner must prove that "the application of the ordinance has infringed upon the landowner's rights to the point that there is no economically viable use of the land and, consequently, a taking has occurred for which he or she is entitled to compensation." *State ex rel. BSW Dev. Group v. Dayton* (1998), 83 Ohio St.3d 338, 343, 699 N.E.2d 1271, 1276, citing *Goldberg Cos., Inc. v. Richmond Hts. City Council* (1998), 81 Ohio St.3d 207, 210, 690 N.E.2d 510, 512.

In this case, Tex–1 argues that the property has been rendered valueless because it cannot be used as a microbrewery. We disagree. First, the record shows that the subject property is located in a B–2 zoning district and that there are many possible uses for the property other than as a microbrewery. Second, Tex–1 has failed to present, and the record does not reveal, any evidence to support its claim that the property has been rendered valueless or that it is not economically viable to use the property for some other purpose.

From our review of the record, we conclude that the trial court's judgment is supported by the evidence and that it therefore did not err in affirming the decision of the BZA. Accordingly, the second assignment of error is overruled.

## IV

The third assignment of error states:

"The magistrate and trial court erred by overruling appellant's assignment of error that the Board of Zoning Appeals' denial of a conditional use permit constitutes a municipality's use of zoning regulations to extinguish plaintiff's privileges as provided by law."

In this assignment of error, Tex–1 contends that the trial court erred in affirming the decision of the BZA because that decision effectively extinguished, through the use of local zoning ordinances, Tex–1's rights arising under its state-issued liquor permit.[2] In support, Tex–1 cites *Westlake v. Mascot Petroleum Co.* (1991), 61 Ohio St.3d 161, 573 N.E.2d 1068, for the proposition that local zoning ordinances are preempted by state liquor permit laws.

In *Westlake, supra,* the Ohio Supreme Court held that "[w]here a business entity operating in a commercial or industrial district has been issued a valid permit for the sale of alcoholic beverages by the Ohio Department of Liquor Control, a municipality is without authority to extinguish privileges arising thereunder through the enforcement of zoning regulations." *Id.* at paragraph two of the syllabus. The court held, based upon language in Revised Code Chapter 4303, that the General Assembly intended state liquor permit laws to

---

2. While the appropriate liquor permits had not been issued to Tex–1 at the time of the hearing before the BZA, the undisputed evidence was that the permits would, in fact, be issued.

pre-empt local zoning ordinances insofar as those ordinances are utilized in an attempt to regulate the *sale* of beer and liquor. *Id.* at 165–168, 573 N.E.2d at 1071–1073.

The court based its conclusion upon an amendment to R.C. 4303.26 adding the following language:

"In this hearing [on an application for a liquor permit], no objection to the issuance, transfer of ownership, or transfer of location of the permit shall be based upon noncompliance of the proposed permit premises with local zoning regulations which prohibit the *sale* of beer or intoxicating liquor, in an area zoned for commercial or industrial uses, for a permit premises that would otherwise qualify for a proper permit issued by the department of liquor control." (Emphasis added.)

The court concluded, "It is evident from the language of the amendments that the exclusive authority to regulate the *sale and consumption* of alcoholic beverages is vested in the Ohio Department of Liquor Control and the Ohio Liquor Control Commission." (Emphasis added.) *Westlake v. Mascot Petroleum,* at 167, 573 N.E.2d at 1073.

The court further relied for this conclusion upon the following language from Section 3, Am.Sub.H.B. No. 419, 142 Ohio Laws, Part II, 3675, the bill containing the amendments to which it had earlier alluded:

"The legislative intent of this act is to specify that only the residents of a community have the right to approve or disapprove the *sale* of alcoholic beverages through the statutory provisions authorizing a local option election, that if *sales* of such beverages are approved, the primary authority to regulate the *sale* of alcoholic beverages is delegated to the Department of Liquor Control, and that the legislative or executive authority of a political subdivision has only such rights or powers with regard to these *sales* as are expressly granted under Chapter 4303. of the Revised Code." (Emphasis added.)

■ We conclude that the pre-emption of local zoning law found in *Westlake* to have resulted from the 1987 amendments to the Ohio liquor laws extends only to the regulation of the location of properties upon which beer and intoxicating liquor are *sold* and does not extend to the regulation of the location of properties upon which beer and intoxicating liquor are *manufactured.* Indeed, to conclude otherwise would lead to the remarkable proposition that local zoning authorities have no power to regulate the appropriate location, within their jurisdictions, of distilleries or breweries providing for significant shares of the global market for beer and liquor. We doubt that the General Assembly intended that result.

The liquor permits relevant to the operation of Tex–1's microbrewery include the A–1 permit, governed by R.C. 4303.02, and the A–1–A permit, governed by

R.C. 4303.021. The A–1 permit authorizes the manufacture of beer, while the A–1–A permit authorizes the sale of beer manufactured by an A–1 permit holder. Tex–1 seeks to manufacture beer in its microbrewery pursuant to the A–1 permit and to sell that beer pursuant to the A–1–A permit. Given that the A–1 permit relates solely to the manufacture, not the sale, of beer, we conclude that the holding in *Westlake* is not applicable. Furthermore, Tex–1 has failed to cite, and we have been unable to find, any statutory provision suggesting the General Assembly's intent to pre-empt local zoning laws as they pertain to the *manufacture* of alcoholic beverages, an intent we find to be inherently unlikely for the reason noted above.

The third assignment of error is overruled.

## V

Tex–1's assignments of error having been overruled, we affirm the judgment of the trial court.

*Judgment affirmed.*

WOLFF, P.J., and FREDERICK N. YOUNG, J., concur.